The **INGALLS IRON WORKS COM-PANY**, a corporation, Plaintiff,

v.

**FEHLHABER CORPORATION**, a corporation, and Terry Contracting, Inc., a corporation, as individual corporations, as members of a joint adventure known as Fehlhaber-Terry, as cotrustees under an express trust, and as statutory cotrustees under Article 3–A of the New York Lien Law; Fehlhaber-Terry, a joint adventure consisting of Fehlhaber Corporation, a corporation, and Terry Contracting, Inc., a corporation, Aetna Casualty and Surety Company, a corporation, American Employers Insurance Company, a corporation, and X, Y, and Z, whose names are otherwise unknown to plaintiff, but who are persons, firms or corporations who are transferees of trust assets liable to plaintiff, or persons aiding and abetting said named defendants, whose names will be added by amendment when ascertained, Defendants.

Civ. A. No. 65–CV–372.

United States District Court
N. D. New York.

Sept. 29, 1967.

Thomas V. Kenney, Troy, N. Y., C. V. Stelzenmuller, Birmingham, Ala., for plaintiff, John W. MacDonald, Ithaca, N. Y., McChesney & Kenney, Troy, N. Y., Thomas, Taliaferro, Forman, Burr & Murray, Birmingham, Ala., of counsel.

Norton, Sacks, Molineaux & Pastore, New York City, for defendants, Fehlhaber Corp., Fehlhaber-Terry, a joint venture, The Aetna Casualty & Surety Co. and American Employers Insurance Co., Stanley J. Norton, Charles B. Molineaux, Jr., New York City, of counsel.

JAMES T. FOLEY, Chief Judge.

### Memorandum-Decision and Order

As the title might warn, claims that create complexity are set forth in this action. The motion at hand has resulted in a massive submission. The briefing by plaintiff was withheld for several months and then when filed was most extensive in its coverage followed by a tit-for-tat prolonging of the final submission by letters and supplemental affidavits by both sides for a substantial time period.

Generally, the motion by the named defendants can be described as one for summary relief of dismissal of each of the three claims, or in the alternative for summary judgment grant for a substantial portion in the amount of $1,500,000 of the $1,601,377.27 sought in the dollar-and-cents overall demand. There is also detailed equitable relief sought such as accounting, identification and proper distribution of the $1,601,377.27, as alleged trust assets. The extensive briefing referred to, of almost two hundred pages, covers many legal propositions ramified to an extent that it seems inconceivable so much case law and text discussion could arise from a simple factual base, namely, the supply of steel by the plaintiff manufacturer-supplier to a highway improvement and construction job in the Borough of Brooklyn, Kings County, New York. The language in the briefing and substantial affidavits submitted is filled with charges and counter-charges of the most serious kind, with criminal violations regarding some conduct of both sides at least inferred. My experience has been that bitterness of this kind seems often to be found in construction disputes, but after the smoke has cleared and the battle is over, participants contract and do business freely again in new projects.

There is an odd, unusual and even bizarre background to be discussed herein that may supply justification for the present attitudes and need for the elaborate briefing and submission for summary relief. The contentions are a twisting, tumbling kind in many respects, always hard to diagnose in a paper submission. The caution that is a wise one, as Judge Medina remarked recently, is that an avalanche of verbiage and mutual recriminations of one sort or another may bury simple facts and lead a District Judge to erroneous summary grant that results only in the waste of more time. (See Sherman v. Kirshman, 2 Cir., 369 F.2d 886).

The background facts are adequately covered in the complaint, affidavits and counter-affidavits, and particularly set forth with detail in the affidavit of Frederick R. Fehlhaber attached to the motion papers. Summarization only is necessary for the purpose of this decision. The exhibits noted throughout are attached to the motion papers.

On or about April 18, 1960, Fehlhaber Corporation (Fehlhaber), with co-defendant Terry Contracting, Inc., (Terry), bidding as joint venturers, entered into a contract with the State of New York for the construction of a highway improvement in Kings County, described as Interstate Route Connection 512–Gowanus Expressway. The construction contract is officially termed for ready reference Contract FIGE 60–2.

Thereafter, on May 10, 1960, Fehlhaber and Terry entered into a Joint Venture Agreement, a substantial and detailed writing. (Ex. B). This agreement between the joint venturers, at times referred to in the law as joint adventurers, which may be a more apt description in this litigation, apportioned specifically certain portions of the work

to be done by Fehlhaber and Terry for the State under the contract. It sets forth the obligations, liabilities, responsibilities and other details not only concerning the work but also concerning the moneys received from the contract, the sharing of losses and division of profit or loss, all unnecessary to delve into now.

Then the transaction occurred that caused this litigation. In July and October, 1960, Terry, in furtherance of work set forth in Schedule B of the Joint Venture Agreement, entered into an agreement with Plaintiff for the furnishing of a substantial amount of steel for installation in the road improvement. (Exs. D, D–1). There is much dispute as to the manner in which the following events are to be described, and the inferences to be drawn therefrom. However, it is clear Plaintiff Ingalls during 1960 and 1961 delivered steel to the project, payments for such deliveries were made to the Joint Venture, came into Terry's hands but were never paid to Ingalls, and it seems undisputed Ingalls gave receipted invoices that were to be forwarded and processed to the State that would induce payment of the moneys for the steel deliveries by the State of New York. The major factor, of course, underlying the claims was that such moneys never had been or were ever paid by Terry to Ingalls. Fehlhaber vigorously contends that in good faith observance of the receipted invoices of Ingalls it was led to the belief that Ingalls received and was receiving the actual payments from its joint venturer, Terry.

There is a lengthy letter of April 24, 1961 that plays an important role in a series of unusual happenings. (Ex. G–1). This letter is signed by Richard G. Terker, President of Terry Contracting, Inc., not only in behalf of that firm but underneath the Joint Venture listing of Fehlhaber and Terry. This letter defendants' counsel persistently call a "secret agreement", contending Fehlhaber was completely unaware of it, and that it was prepared by the Plaintiff Ingalls' New York attorney for Ingalls and Terry. The terms of this letter do defer payment by Terry to Ingalls of $1,500,000.00 in consideration of an additional $100,000.00 to be paid by Terry.

Later, in other important incidents, meetings were then held among representatives of Ingalls, Terry and Fehlhaber. These meetings resulted in a writing (Ex. H), a letter-agreement with formal acceptances which not unexpectedly or unusually in a legal contest is interpreted differently by the attorneys. The writing, of course, will ultimately speak for itself to judicial analysis and wisdom, but it does at least import that the steel orders from Terry to Ingalls were solely a contract between such companies and Fehlhaber was never a party thereto or incurred any obligation under the letter-agreement of April 24, 1961.

The next development with the same fascination is that on April 2, 1962 a release and waiver of lien with respect to $1,500,000 worth of the steel materials delivered and used in the highway improvement were executed by the President of Ingalls, J. B. Kopp. Again, there is intense argument as to the legal effect of these writings particularly in regard to the authorization for their execution together with claimed circumstances of duress to compel an execution, making the documents legally invalid and unmaintainable against the three claims for the amount stated.

My survey is much lengthier than intended, but the difficulty to compress should be obvious and my only purpose to recite so much is to help others find their way. The three claims are set forth in good form and I am sure as succinctly as can be in this bewildering set of circumstances where they provide a springboard for at least the arguable application of diverse and ponderous legal principles.

The three claims can be essentially described briefly: The first claim is an action to enforce a trust under Section 77 of Art. 3–A, New York Lien Law, McKinney's Consol.Laws, c. 33. As provided therein, Ingalls sues as representative of the class of trust beneficiaries and in accord with F.R.Civ.Proc. 23(a) pertain-

ing to class actions. The second claim charges the trust funds in the amount of $1,601,377.62 were wrongfully withheld in violation of the express trust referred to in Paragraph 13 of the Joint Venture Agreement between Fehlhaber and Terry. The third claim asserts defendants Fehlhaber-Terry, (joint venturers), Terry, Fehlhaber, Aetna and American Employers breached the performance and labor and material bonds posted in the usual course with the State of New York in the penal sum of $11,125,124.45 for the entire road improvement.

To the first claim there is presented a clear question in a major respect as to its maintainability by defendants' request for its dismissal. Of course,—and this may be a good place to so note,—the partial release and waiver of lien instruments to the extent of $1,500,000.00 obviously raise substantial questions for consideration and are underlying barriers to each of the three claims, in addition to the other varied and specific reasons presented for dismissal to the three separate claims.

■ The main contention set up against the first claim is that it is barred by the Statute of Limitations set forth in Section 77(2) of the Lien Law of New York. This section provides that no action under the Lien Law, Article 3–A, as the first claim is, shall be maintainable if commenced more than one year after the completion of the public improvement. The argument advanced by the defendants is that inasmuch as the date of completion, September 29, 1964, was formally determined as the date of completion by New York, and the action was not commenced until October 11, 1965, the first claim must—as a simple computation of time period—fall as a matter of law.

It would seem such completion date should be easily ascertainable from public records in a public improvement of this kind, and allow ruling with ease one way or the other. (See Wynkoop v. Mintz, 17 Misc.2d 1093, 192 N.Y.S.2d 428; Davis and Warshow Inc. v. S. Iser, Inc. et al., 30 Misc.2d 528, 220 N.Y.S.2d

818; Biondo v. City of Rochester, 18 A. D.2d 78, at page 84, 238 N.Y.S.2d 7; Milliken Bros., Inc. v. City of New York et al., 201 N.Y. 65, 94 N.E. 196). However, there is shown in the submission, in my judgment, enough controversy concerning the completion date as to render it a factual question that will necessitate probing of the issue upon a trial.

There is a letter dated December 7, 1964 from Metropolitan District Engineer, A. M. Saar, to Deputy Chief Engineer LeFeve, notifying him that the work under the contract had been inspected on September 29, 1964 and was found to be completed on that date in accord with the contract and specifications. (Ex. C— Fehlhaber affidavit in support of motion). Then, at the bottom of the letter, there is a signed acceptance of the contract pursuant to the Highway Law by Deputy Chief Engineer LeFeve. In the voluminous affidavit submission by both sides the seeming official positiveness of the completion date and acceptance is controverted to some degree at least by a letter from Madigan-Hyland, Inc., dated November 19, 1964 to Saar stating: " * * * September 22, 1964 (sic) is not the final day of work under the contract and the note to the effect that the contract was completed on September 21, 1964 (sic) is not correct." (Ex. D—affidavit of William J. Kearney, dated January 14, 1966). Madigan-Hyland, Inc. unquestionably had an important relationship with New York State in this contract and is referred to as the State's Engineer on the project. This engineering firm apparently played an important part in processing the receipted invoices of Ingalls not actually paid by Terry that were presented and certificated to the State for certain payments. See affidavit of Winterburg, dated February 17, 1966.

The stature of Madigan-Hyland, it seems plain to me by this letter alone, creates substantial controversy concerning the issue of the exact completion date. Further, there are disputes about the nature of other work undeniably done after September 29, 1966 as to whether

or not it might alter the effectiveness legally of that particular date as the completion one. The plaintiff also contends that this first claim based on Article 3–A of the Lien Law is specifically excepted by its terms from the Partial Release (Ex. J(b)), and the rights of the plaintiff in this claim, in any event, are not dependent on lien filing or right to so file, and consequently not barred by a waiver of lien. (Lien Law, Section 71, Par. 4).

Therefore, varied issues of material fact, I think, are evident that prevent use of the summary ruling requested on the first claim.

The second claim, based upon the express trust created in the joint venture I find immersed in a similar cauldron of intense conflict and fine distinctions, factually and legally. The defendants urge earnestly that this trust agreement was specifically limited to outlined Schedule C and D work of the Joint Venture Agreement, arguing that these portions of the work were the joint venture's responsibility only. The defendants describe this express trust to be their (Terry and Fehlhaber) private and circumscribed trust agreement, conferring no benefits upon Ingalls, not being a party to it. The importance of this contention, if upheld, is that practically it would remove the responsibility of Fehlhaber, as joint venturer, to Ingalls as a supplier of the steel to Terry for that portion of the work allotted to Terry under Schedule B.

■ There is literally tons of law supplied in the briefing on the many legal points involved and a great portion of the plaintiff's briefing is devoted to the case law of many states and coverage of many texts. The law of New York solely applies here. (Klaxon v. Stentor, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477). Persuasive writings of other States are always helpful in unusual and complex situations. The dominant principle in this Circuit, as I read the appellate cases, remains constant, i. e., to forego summary disposition where so many issues of fact in a confused situation must be re-solved in order to deal with complicated questions of law. (Miller v. General Outdoor Advertising Co., Inc., 2 Cir., 337 F.2d 944, 948; Empire Electronics Co. v. United States, 2 Cir., 311 F.2d 175; see also Surowitz v. Hilton Hotel Corp. et al., 383 U.S. 363, 86 S.Ct. 845, 15 L.Ed.2d 807). In relation to this second claim we may have involved the intent of the parties dependent upon interpretation and construction of intricate legal agreements again in a confusing picture and setting, hardly susceptible to summary disposition. (Union Insurance Society of Canton, Ltd. v. William Gluckin & Co., Inc. et al., 2 Cir., 353 F.2d 946; Gordon v. Vincent Youmans, Inc. et ano., 2 Cir., 358 F.2d 261). Settlement agreements, issues of waiver and estoppel have been particularly decided by higher authority as ordinarily inappropriate for summary disposition being that kind presenting elements for trial. (Artvale, Inc. v. Rugby Fabrics Corp. et ano., 2 Cir., 363 F.2d 1002; United States v. Diebold, Inc., 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176).

■■ Joint venture principles are in a state of development engendering much writing and still filled with imponderables and uncertainties in their application when real problems are encountered. Among the myriad problems at least debated now (many may be later obvious to a trial judge as tangential, irrelevant and unfounded after pretrial discussion and order) there is at least law to settle that joint venture and its responsibilities are primarily questions of fact; further that generally the actions of one joint venturer relating to the object of the joint venture for which the venture is formed may be binding on the other parties as in a partnership. (See Stuart v. Willis et ano., 9 Cir., 244 F.2d 925; Bushman Construction Co. v. Air Force Academy Housing, Inc. et al., 10 Cir., 327 F.2d 481, 484; Fallone v. Misericordia Hospital et ano., 23 A.D.2d 222, 259 N.Y.S.2d 947; aff'd. 17 N.Y.2d 648, 269 N.Y.S.2d 431, 216 N.E.2d 594; Simons' Metaalhandel v. Associated Metals & Minerals Corp. of New York, 13 A.D.2d 953, 216

N.Y.S.2d 783; see also Lerner v. Sanderson, 126 Cal.App. 481, 484, 14 P.2d 564). An overriding consideration is the breadth of peculiar responsibility of trust and supervision placed upon joint venturers in relation to the moneys in this type construction contract by the elaborate provisions of Article 3–A of the New York Lien Law. (See Legislative History, Art. 3–A, Lien Law; N.Y. Law Revision Commission Legislative Document (1959) No. 65 F; Aquilino v. United States of America, 10 N.Y.2d 271, 219 N.Y.S.2d 254, 176 N.E.2d 826; Arditi v. Dubitzky, 2 Cir., 354 F.2d 483, 485; United States, for Use of Briggs v. Grubb, 9 Cir., 358 F.2d 508).

■ The position of plaintiff that the release and waiver of lien were unauthorized by the Board of Directors and signed under circumstances of coercion, threats of prosecution and duress of property, as well as the counter-position of the defendants that there was failure to disaffirm these instruments for three years after execution, seem in my judgment to involve conglomeration of factual issues that should, from past examples, be resolved upon trial presentation. (See Ingalls Iron Works Co. v. Ingalls (N.D. Ala.S.D.), 177 F.Supp. 151; aff'd. 5 Cir., 280 F.2d 423; Moyer v. United States, 4 Cir., 206 F.2d 57, 39 A.L.R.2d 1098; United States v. Diebold, supra). Equitable estoppel has the factual feature of reliance in regard to the false invoices. A prime issue, of course, is the assertion of Fehlhaber that it had no knowledge Terry, its co-joint venturer, was receiving from the State, moneys for steel supplied by Ingalls and not making payments to Ingalls. It seems apparent the source of the dispute is Terry, in financial adversity, used the money for other purposes. Issues of this kind are genuinely factual in nature, needing proof for proper analysis regardless of legal implications of constructive notice, apparently that may be drawn from joint venture arrangements. The uncountable legal problems that the lawyers envision arising from the jigsaw puzzle of background facts will not allow my mind to dispose of them without trial. The dismissal of the Second Claim summarily is denied.

■■ There is some solace, even if it be grave error, that I think the situation, factually and legally, in regard to the third claim, is so clear-cut that it dictates a summary dismissal. The New York law is settled and the Statute so provides that a party seeking to recover on a labor and material Bond furnished pursuant to Section 137 of the State Finance Law, McKinney's Consol.Laws, c. 56, must allege and prove the filing and enforcement of a Mechanics Lien as a condition precedent. (See Chittenden Lumber Co. v. Silberblatt & Lasker, Inc., 288 N.Y. 396, 404, 43 N.E.2d 459; Westchester Asphalt Distributing Corp. v. Yonkers Contracting Co., Inc. et al., 4 A.D.2d 774, 165 N.Y.S.2d 283; aff'd. 4 N.Y.2d 751, 172 N.Y.S.2d 166, 149 N.E.2d 92). There is failure to so allege in the third claim and a decision of Supreme Court Justice Staley of New York, rendered June 14, 1966 and submitted herein, vacated, discharged and annulled a lien filed by Plaintiff against Fehlhaber-Terry, Joint Venturers. Therefore, it is clear the statutory enforcement of the lien necessary to sustain this third claim is unattainable. The reasoning of the plaintiff to consider it a common law bond runs counter to the fact that it is a bond required by statute and the case law offered by the plaintiff as contrary to that cited above is inapposite, in my judgment. The performance bond, and the plaintiff offers nothing in opposition to this argument, cannot benefit the plaintiff because the obligee of such type bond is the State of New York. (See Fosmire v. National Surety Co., 229 N.Y. 44, 127 N.E. 472; State Bank of Albany v. Dan-Bar Contracting Co., Inc. et al., 23 Misc.2d 487, 199 N.Y.S.2d 309). The third claim based upon breach of the Performance and labor and material bond, and asserted against Defendants Fehlhaber-Terry, Terry, Fehlhaber, Aetna and American Employers is dismissed as a matter of law in failing to state a claim upon which relief could be granted.

Summarizing, the motion of the defendants for summary judgment of dismissal of the first and second claims, or in the alternative for partial summary judgment in relation to them is denied and dismissed. The motion to dismiss the third claim is granted and such third claim is hereby dismissed. The oral motion of the plaintiff for summary judgment on the first and second claims in its favor, apparently a gesture with no support in its behalf, is denied.

From the prolonged consideration I found necessary to fathom the maze of facts and law presented herein, I hereby grant the defendants' request and certify, pursuant to 28 U.S.C. § 1292(b) that controlling questions of law exist concerning which there is great difference of opinion, and an immediate appeal, if allowed from this order may materially advance the ultimate termination of the litigation. I am aware of the caution and agree that this procedure of certifying interlocutory appeal should be used sparingly and with discrimination by District Judges. (Gottesman et al. v. General Motors Corp. et ano., 2 Cir., 268 F.2d 194; Lear Siegler, Inc. v. Adkins, 9 Cir., 330 F.2d 595, 598; Texas San Juan Oil Corp. v. An-Son Offshore Drilling Co., (SDNY), 198 F.Supp. 284, 286).

However, my experience with this submission leaves no doubt that a District Judge some time and some place will be heavily burdened for a long time with pretrial procedures, lengthy actual trial of several weeks and extensive briefing upon extremely close and substantial legal issues. An intermediate appeal may alleviate entirely or cut down such task if the solution to these questions are viewed differently from the conclusions of this decision. I believe sincerely this is the proper type case, and it is my first certification, in which this statute permitting interlocutory appeal should be invoked to further the interests of justice. Likewise, it seems the plaintiff may have no appeal as of right from the dismissal of the third claim in a multiple claim action, and the certification and consideration of interlocutory appeal, and the reasons set forth in support extend to the decision of dismissal of the third claim. (See DeNubilo v. United States of America, 2 Cir., 343 F.2d 455).

Several motions on procedural matters will be decided in a separate decision to be filed as of this same date. The disposition of those motions will defer in effect deposition and discovery proceedings in the case until the Court of .Appeals, Second Circuit, acts under Section 1292(b) Tit. 28 U.S.C.

It is So Ordered.