Meier Steinbrink,
Spec. Bef. This is an action pursuant to section 71 (art. 3-A) of the Lien Law to impress a trust (created by section 25-b of said law) upon funds allegedly received by defendants under a contract for a public improvement. As provided by section 71, plaintiff sues on behalf of himself and all persons entitled to share in the fund, although it appears that there are no others unpaid.
The facts are not in dispute. Jones Beach State Parkway Authority, about December 22, 1953, entered into a contract with Hendrickson Bros., Inc. (hereafter called the General Contractor) for improvement of a section of the Southern State Parkway, known as contract No. 4 (plaintiff’s Exhibit 3). About January 26, 1954, Cross, Austin & Ireland Lumber Co., hereafter called Cross, entered into a contract to furnish to the General Contractor certain traffic signs required for the improvement. There were minor modifications in May and July, 1954 to conform to changes requested by the Authority. Cross, in turn, ordered some of the work and materials from the defendant Yves De Villers, hereafter called De Villers, who, in turn, ordered and received from plaintiff for the job certain metal panels, letters, numbers, arrows, etc., with screws for attachment to signs. Cross paid De Villers a deposit of $2,000 on February 4,1954 and an additional $1,000 on February 8, 1954. The original price to Cross was apparently $6,165, increased on February 8, 1954 to $6,250.
On June 23,1954 De Villers submitted to defendants the Mint Factors, hereafter referred to as Factors, what purported to be a duplicate invoice, undated but referring to a customer’s order dated February 4, 1954 from De Villers to Cross in the sum of $6,165 less $2,000 deposit received, with an indicated balance of $4,165. At the same time the written agreement was executed by which De Villers sold and assigned to Factors any and all sums of money then due or to become due upon the account *1095 annexed to the assignment. De Yillers made certain representations to Factors but these are not now material. Factors, on June 23,1954, gave to De Yillers its check for $2,125 and De Yillers acknowledged receipt of $2,500 less a “ service charge ” of $375. De Yillers was to receive the excess over $2,500 actually paid by Cross. Thereafter De Yillers apparently completed its contract with Cross including some additional work ordered August 2 and August 23,1954. It sent its invoice dated September 28, 1954 to Cross for $6,896 including the charges for additional work and gave credit for $3,000 deposit received showing a balance claimed of $3,896. This bill is stamped “ this bill is assigned and payable only to The Mint Factors ”. The $3,896 was paid by Cross to Factors about October 6,1954. On October 13, 1954, by its check Factors paid De Yillers $1,333.50 which is the difference between the $3,896 it had received from Cross and $2,500 (or $1,396) less an additional charge of $62.50.
Plaintiff’s agreement with De Yillers originally called for payment to plaintiff of $3,495.65 and this was subsequently modified to $3,775.85. Plaintiff’s materials were delivered directly to Cross for the account of De Yillers from August 20, 1954 to September 27, 1954. De Yillers paid nothing to plaintiff at any time and has left the country. De Yillers failed to answer and is in default. Plaintiff originally filed a notice of lien on moneys due to the General Contractor from the Authority, under the provisions of sections 12, 5 and 2 (subd. 10) of the Lien Law. The Appellate Division has held (Wynkoop v. People, 1 A D 2d 620, affd. 4 27 Y 2d 892) that plaintiff acquired no valid lien on the moneys due to the General Contractor as plaintiff and was not within the purview of section 5 of the Lien Law, which allows a lien to a person performing labor or furnishing materials only to the contractor or his subcontractor, not to remote subcontractors of subcontractor. Hendrickson had previously paid Cross in full and, of course, Cross had paid De Yillers in full. The present action to impress a trust on the moneys received from Cross was commenced on June 14, 1956.
Defendant Factors has interposed the defense of the Statute of Limitations on actions such as the present one which is contained in section 75 of the Lien Law. This section provides: ‘ ‘ [n] o action to enforce a trust under this article shall be maintainable if commenced more than one year after completion of the improvement on account of which the claim arose.”
Factors contend that the one-year period of limitation specified begins to run from the last day plaintiff furnished labor or materials to De Yillers. Plaintiff contends that the time begins *1096 to run after the completion by the General Contractor of the entire job, that that is the “ improvement ” on account of which plaintiff’s claim arose. If plaintiff’s contention is valid, then apparently the action is timely as it seems to be admitted that the General Contractor did not complete the entire job more than one year prior to June 14, 1956.
It is stated that this is a case of first impression on this issue. No similar reported case has been found.
I cannot agree with defendants’ contention that the one-year period of limitation began to run from the last day plaintiff furnished labor or materials to De Villers. Section 75 is a general statute intended to cover many situations. While here no one other than plaintiff appears to have an unpaid claim for labor or materials furnished to De Villers, there might well be in a similar case many materialmen and subcontractors whose work is completed at various times' running over a considerable period of time. The action is a representative one and it must be assumed that the period of limitation would apply to all in the same class. Their immediate subcontractor or contractor ahead of them in the chain would be receiving money on account of work and materials, and these funds are designated in the statute as trust funds. Until the entire improvement is completed, for some time thereafter it is not unusual for payments to be received, especially out of the retained percentage provided for in most public contracts. For example, in plaintiff’s Exhibit 3 it is provided that the Authority will retain 10% of the first 50% of the value of completed work until the final completion and acceptance of the entire project. If contractors have similar provisions in their contracts with subcontractors then payments designated as trust funds by the statute might be received long after the completion of work by subcontractors or sub-subcontractors. The Legislature has provided, in effect, that all funds received in payment of improvements are trust funds for the payment of the obligation incurred to create the improvement. When it said “ one year after the completion of the improvement on account of which the claim arose ”, in my opinion it meant one year after completion of the project. This is a date readily ascertainable especially in a public improvement. I do not believe the Legislature meant to have the period of limitation start to run merely after partial completion on various dates, as contended by defendants. The defense of the Statute of Limitations is overruled with exception to defendants.
Considering the action apart from the Statute of Limitations, it is necessary for plaintiff to establish that trust funds, due or *1097 received by a contractor (De Villers) and which plaintiff had the right to expect would be available for the payment of subcontractors on claims such as plaintiff’s, were diverted. Whether Factors here be deemed assignees or secured lenders or purchasers of De Villers’ claim against Cross, it seems to me that plaintiff can complain only if part of the fund of $6,896 paid by Cross was diverted for purposes other than being available to De Villers for the payment of subcontractors’ claims arising out of the particular improvement and then only to the extent of such diversion.
The proof is clear that, on account of the $6,896, De Villers received $3,000 directly from Cross and $2,125 plus $1,333.50 from Factors or a total of $6,458.50. These funds in De Villers’ hands were clearly trust funds, and since not used for the payment of plaintiff’s obligation and there being no proof that they were used by De Villers for the payment of any other claims arising out of the particular improvement, plaintiff is entitled to judgment as against De Villers. The proof is equally clear that Factors received $437.50 more from Cross than it turned over to De Villers. I am not concerned with whether this was an excessive charge, but it can scarcely be held to be a disbursement on account of the cost of improvement and hence its retention by Factors is a diversion of part of the trust fund to which subcontractors including plaintiff were entitled to look for payment for their work on the improvement which gave rise to the fund.
It might also be pointed out that while Factors claim it had no knowledge that the “ account ” it “bought ” from De Villers arose out of a public improvement, it certainly should have known and would have known had it made the slightest inquiry. I am reminded of the saying that there are none so blind as those who will not see. The duplicate invoice assigned to Factors is undated, has no date of shipment and has the notation “ Contract No. S. S. P. 4 ” which refers to Southern State Parkway No. 4. It is from a reflector company to a lumber company for 27 panels, letters, numbers, arrows, etc., for 61 signs for an indicated price of $6,165. It must have occurred to Factors to wonder for what purpose the lumber company would purchase $6,165 worth of metal reflector letters to be used on relatively few signs. Obviously public highways are large users of such reflector letters. In fact, De Villers’ stationery at the top bears the words ‘ ‘ Reflectorized signs and signals for State and Federal Highway Departments, Railways, Automotive and Outdoor Advertising.” The invoice in question was not then a valid obligation of Cross *1098 as nothing had been delivered to Cross on or before June 23, 1954, the date of the transaction with Factors. At most it was a transfer of De Villers ’ future rights against Cross, confirmed when the invoice of September 28, 1954 was sent to Cross with the “ assigned to Mint Factors ” legend thereon.
This latter invoice, the one actually paid by Cross, differs from the one originally transferred to Factors. Nevertheless there was made available to De Villers all but $437.50 of the payment by Cross, and it can only be said that there was a diversion by Factors to the extent of said $437.50.
Accordingly, there will be judgment against De Villers as hereinbefore indicated and against Factors to the extent of $437.50 with interest from October 13, 1954, together with costs.
Settle judgment on notice.