ONONDAGA COMMERCIAL DRY WALL CORP., Respondent, *v.* SYLVAN GLEN CO., INC., Appellant.

Fourth Department, June 30, 1966.

*Hancock, Dorr, Ryan, Shove & Hust (John F. Gates* and *William L. Allen, Jr.,* of counsel), for appellant.

*Welch, Welch & Carr (Charles R. Welch* of counsel), for respondent.

BASTOW, J. Defendant appeals from a judgment declaring that the sum of $385,000 alleged to have been received by it as proceeds of a building loan agreement is a trust fund pursuant to the provisions of article 3-A of the Lien Law, directing that defendant file an accounting with the court and take other procedural steps that in substance would make the fund available for payment not only of plaintiff's claim but also unpaid claims of " subcontractors, architects, engineers, surveyors, laborers, and materialmen who have participated in the improvement of the real property " (46 Misc 2d 938, 941).

Defendant (herein " Sylvan " or " owner ") owns realty in the City of Oswego. In 1964 it entered into a written contract with one Serafini and J. J. Serafini Co., Inc. (herein " contractor ") for the construction of seven apartment dwellings for an agreed amount of $300,300. The contractor proceeded with the work and entered into various subcontracts including

one with plaintiff for the drywall in the buildings at a total cost of $26,400 of which $20,000 remains unpaid.

Shortly after the basic contract was executed Sylvan entered into a building loan contract with a Watertown bank by which the latter agreed to loan $350,000 with advancements to be made as the work progressed. Simultaneously, the owner executed to the bank a mortgage upon the realty to secure the payment of the stated amount. Subsequently, and in August, 1964, Sylvan executed a second mortgage to the bank to secure the payment of an additional $35,000. There was proof before Special Term on the motion for summary judgment that this additional amount was to be received by Sylvan when its rent rolls reached a certain minimum figure. While the owner by these instruments had a conditional commitment to receive a total of $385,000 the proof is that it had received from the mortgagee only the sum of $310,100.

There is no claim that Sylvan has improperly disbursed any of these moneys or diverted any of them. It paid to the contractor the sum of approximately $257,000 leaving a contract balance of about $43,000. The contractor defaulted and the owner pursuant to a provision of the contract took over completion of the contract work. Its architect certified that the estimated cost of completing the work would exceed the balance due to the contractor by some $5,000. These facts are substantiated by documentary proof submitted by defendant and are not disputed by plaintiff.

Plaintiff contended, and so Special Term in substance held, that it is entitled to payment of the balance of $20,000 or its prorata share thereof, from the fund of $385,000 which the owner has received or may receive from the mortgage loans. In addition Special Term, as stated, has held that certain specified classes of creditors are also entitled to share in this undisbursed fund.

In 1959 former article 3-A of the Lien Law was repealed and a new one enacted (L. 1959, ch. 696). This was done upon recommendation of the Law Revision Commission which stated that " the principal changes in substance made by the bill relate to the circumstances in which a use of trust funds for a purpose not defined as a trust purpose is a diversion that can be set aside." (1959 Report of N. Y. Law Rev. Comm., p. 207.) In an earlier report the Commission recognized that such diversion of funds (known in the construction industry as " pyramiding ") was done on occasion by owners, contractors and subcontractors. (1958 Report of N. Y. Law Rev. Comm., p. 519.)

Section 70 of article 3-A, as enacted in 1959, provides (subd. 1) that "the funds described in this section received by an owner for or in connection with an improvement of real property in this state, or received by a contractor under or in connection with a contract for an improvement of real property * * * or received by a subcontractor under or in connection with a subcontract made with the contractor * * * shall constitute assets of a trust for the purposes provided in section seventy-one of this chapter." The section goes on to specify what constitutes assets of a trust of which an owner (subd. 5), a contractor (subd. 6) or a subcontractor (subd. 7) is trustee. A contractor is made trustee of assets, among others, of funds received by him under the contract.

While an owner is trustee of funds received by him under a building loan contract or mortgage, the beneficiaries of such a trust, as defined in section 71, are "persons having claims for payment of amounts for which the trustee is authorized to use trust assets" (subd. 4) and "trust claims" are defined (subd. 3) as claims of stated classes of creditors "for which the owner is obligated".

In the light of these statutory provisions we conclude that plaintiff has failed to establish that it is a beneficiary of the trust assets held by defendant or that there has been any diversion thereof by the latter. Plaintiff is clearly a beneficiary of the trust assets received by the contractor. The latter has received from the owner some 85% of the agreed contract price of $300,300. The record is silent as to the disposition of these funds except, as stated, that the contractor defaulted and the further fact that it is no longer in business and that Serafini is working as an employee for another construction company. Presumably, plaintiff has a cause of action against the contractor for an accounting. Moreover, a contractor who misapplies such trust funds is guilty of larceny (Penal Law, § 1302-c, subd. 1, par. [b]).

The conclusion reached by Special Term in substance would be a holding that once an owner pays moneys to a contractor pursuant to the provisions of a contract for improvement of realty he becomes a cotrustee or fiscal manager of the fund with the obligation to make certain that the fund is disbursed to those entitled thereto. If the owner fails to perform this imposed duty he becomes a guarantor of payment to the creditors of the contractor to the extent that trust assets in the form of mortgage loans or commitments may remain in his hands. We find no such legislative intent in the statute.

The judgment should be reversed and the complaint dismissed. (CPLR 3212; *Garcia* v. *MVAIC*, 18 A D 2d 62.)

WILLIAMS, P. J., GOLDMAN, HENRY and DEL VECCHIO, JJ., concur.

Judgment on the law and facts unanimously reversed, with costs, and complaint dismissed, with costs.