PHILLIP W. SCRIVEN, Respondent, v. MAPLE KNOLL APARTMENTS, INC., et al., Appellants.

Third Department, December 12, 1974.

*Love, Balducci & Scaccia* (*Richard J. Brickwedde* and *Dante Scaccia* of counsel), for Maple Knoll Apartments, Inc., appellant, and for Ralph Larsen, respondent.

*Crystal, Manes & Rifken* (*Milton J. Crystal* of counsel), for Upstate Builders Supply Corp., respondent.

*George E. Langer* for Stanley Bellinger, respondent.

*Richard A. Wittenburg* (*John A. Cirando* of counsel), for Gould-Farmer Company, Inc., respondent.

*Farone & Devine* (*Philip J. Devine* of counsel), for Charles Zimmerman, appellant.

*Murphy & Niles* (*George F. Murphy* of counsel), for Phillip W. Scriven, respondent.

KANE, J. Maple Knoll Apartments, Inc. (hereafter Maple Knoll) owned certain real property in Fulton County and its president, Ralph Larsen (hereafter Larsen), contracted on its behalf with Norwich Homes, Inc. (hereafter Norwich) to construct an apartment complex thereon. As general contractor, Norwich subsequently engaged Phillip W. Scriven (hereafter Scriven), Gould-Farmer, Inc. (hereafter Gould), Upstate Builders Supply Corp. (hereafter Upstate), Stanley Bellinger (hereafter Bellinger), and Charles Zimmerman (hereafter Zimmerman) as subcontractors to supply different items of material and labor necessary for completion of the project as the work progressed. In default of payment, Upstate filed a notice of lien on December 12, 1969, followed by Bellinger on March 5, 1970, Gould in March 13, 1970, Scriven on March 23, 1970, and Zimmerman on April 30, 1970. Upstate filed a supplemental notice of lien on May 18, 1970 (see *Matter of Upstate Bldrs. Supply Corp.* [*Maple Knoll Apts.*], 37 A D 2d 901).

Scriven commenced this action to foreclose his lien against Maple Knoll naming the other lienors, Larsen and Norwich as parties defendant, together with Derkay Construction Co., Inc. (another lienor), the Marine Midland Trust Company of Central New York (construction lender), and the City and County Savings Bank (permanent mortgagee). Action against these latter parties was subsequently dismissed or discontinued, but the remaining litigants filed various cross claims and counterclaims.

Following a trial of the issues without a jury, the trial court (1) permitted the amendment of Gould's notice of lien so as to increase the amount thereof *nunc pro tunc*; (2) granted each prevailing lienor an additional allowance of 5% of the amount of their respective awards; and (3) awarded judgment to each of the lienors against Maple Knoll, directing the payment to them of certain funds held by the Fulton County Treasurer and the sale of the property so liened to satisfy the balance of such awards, but dismissed all claims against Larsen. Maple Knoll appeals from each of these determinations, except that which relates to Larsen, while Zimmerman cross appeals from the dismissal of those claims.

Resolution of the many issues presented on this appeal is seriously hampered by the apparent confusion existing among the parties between an action to foreclose a mechanic's lien under article 3 of the Lien Law and one which is founded on the trust provisions of article 3-A of that law. Although, broadly speaking, both are designed for the protection of materialmen and laborers, it is well understood that the actions are distinct and that one does not depend on the statutory provisions of the other for success (*Onondaga Commercial Dry Wall Corp.* v. *150 Clinton St.*, 25 N Y 2d 106; *Aquilino* v. *United States of America*, 10 N Y 2d 271; Lien Law, § 79).

An example of this confusion is first encountered on Maple Knoll's appeal from the order permitting the *nunc pro tunc* amendment of Gould's notice of lien. It appears that Gould moved for this relief after proof at trial had been completed so as to increase the amount of its lien by a sum equal to the sales tax due on its unpaid claim. It maintains that the failure to have included that amount in its original notice of lien was the result of an inadvertent oversight and points out that an itemized statement and its pleadings had previously placed Maple Knoll on notice of this discrepancy. In opposition, Maple Knoll argues that the motion was untimely, without sufficient excuse to justify the amendment, barren of any showing that its grant would be without prejudice to others, and not within the scope of matters for which section 12–a of the Lien Law was designed to afford relief. We agree completely and must reverse the order appealed from (*Matter of Perrin* v. *Stempinski Realty Corp.*, 15 A D 2d 48). However, this does not necessarily mean that Gould's demand for this increase is wholly invalid or unenforceable. Proof at trial adequately supported the amount thereof and, if Gould's article 3-A trust claim is otherwise successful, we can perceive no reason why collection of such a sum should

be barred merely because the motion to amend was predicated upon the provisions of article 3.

A more difficult problem arises in connection with the judgment directing a foreclosure sale of the Maple Knoll premises to satisfy the various liens found to exist. Maple Knoll attacks the validity and amount of the liens filed by Upstate, Gould and Zimmerman. We have carefully examined the arguments advanced to defeat those liens and find them to be without merit. Insofar as any willful exaggeration of amount is asserted, we agree with the trial court's determination of such factual matters adversely to Maple Knoll and will not disturb those liens on that basis (cf. *Goodman* v. *Del-Sa-Co. Foods,* 15 N Y 2d 191; *Collins* v. *Peckham Road Corp.,* 18 A D 2d 860, 861). We also concur with the findings of the trial court that the Gould lien was timely filed and, under the circumstances presented, that the "plug-in" items comprising a portion of its claim were properly lienable as permanent improvements to this apartment complex (*Wahle-Phillips Co.* v. *Fitzgerald,* 225 N. Y. 137; *Williams* v. *London,* 61 Misc. 494). When combined with those liens as to which Maple Knoll raises no dispute on this appeal, we conclude that the amount and validity of each lien stand adequately established and will so remain (*Reedy Elevator Co.* v. *Monok Co.,* 189 App. Div. 458).

However, a reversal of the judgment directing a foreclosure sale of the premises is necessary because satisfaction of such liens is statutorily limited to the sum earned and unpaid on the contract at the time of filing the notice of lien and any subsequently earned sum (Lien Law, § 4). Those sums were not here calculated (cf. *Central Val. Concrete Corp.* v. *Montgomery Ward & Co.,* 34 A D 2d 860, 861). The trial court simply added the total of certain unexpended improvement funds in the hands of Maple Knoll to the total of trust fund diversions found chargeable to it and derived an aggregate amount which exceeded the value of all claimed liens. Such a procedure improperly mixed the theories of a lien foreclosure action with one to impress or enforce a trust. Priority among the two categories of claimants could never be satisfactorily fixed if such a procedure was sanctioned (cf. *Onondaga Commercial Dry Wall Corp.* v. *150 Clinton St.,* 25 N Y 2d 106, *supra*). We conclude that remittal is required to ascertain the amounts, if any, due and owing from Maple Knoll to Norwich at the time the respective liens were filed or were thereafter earned; the owner's cost of completion and such incidental matters as may be necessary to intelligibly determine whether these liens may be

enforced against the property to the full extent that they have been found to exist. The final outcome may remain unchanged, but a foreclosure sale cannot presently be justified on this record.

Although claims based upon diversions of trust assets by Maple Knoll were alleged in the pleadings of the parties and proof of such diversion was offered at trial, the argument that such a theory was not properly pursued in the required form of a representative action (Lien Law, § 77, subd. 1) is well taken (cf. *Matter of Industrial Laundry Mach. Co.,* 3 A D 2d 843). However, such an action need not fail solely because it was not brought in the proper form of a class action (CPLR 103, 3013, 3017, 3025). Maple Knoll suggests that additional trust beneficiaries may still exist. While this seems unlikely, a remittal followed by a continuance to permit such potential beneficiaries to come forward would appear to accord adequate relief (*Dittmar Explosives* v. *A. E. Ottaviano, Inc.,* 20 N Y 2d 498, 502; *Davis & Warshow* v. *S. Iser, Inc.,* 30 Misc 2d 528, 540). In addition, the amount of funds found to have been knowingly diverted by Maple Knoll through its president, Larsen, cannot be entirely sustained. Included within that sum are funds paid to Upstate and to Zimmerman which were then allocated by them as payments on previous projects. Whether or not this was done at the behest of or with the knowledge of Larsen, it would appear that the remaining trust beneficiaries would be prejudiced if Upstate and Zimmerman were permitted to share equally with them as recoverers of those funds. Furthermore, the nature of certain other expenditures was not adequately shown to constitute diversions of trust assets. Accordingly, further elaboration on these matters would also be proper on remittal. Finally, the trial court expressed no reason for its dismissal of the claims against Larsen as an individual. If he was, in fact, a knowing diverter of any such trust funds, we fail to see why he should escape personal liability for such conduct (cf. *Fleck* v. *Perla,* 40 A D 2d 1069).

Inasmuch as a remittal of this action is required, a disposition of several other issues raised by the parties would be premature and could become unnecessary depending on subsequent developments. Therefore, we will not decide whether an additional allowance to each prevailing party is warranted on this record. If the same parties are again successful, the trial court may re-evaluate the propriety of any such allowances as the circumstances may be then shown to exist. Likewise presently undecided is the final disposition of certain funds now deposited

with the Fulton County Treasurer. Depending on the outcome of further proceedings, recourse to that fund may become unnecessary. However, should that matter remain unsettled, we deem it appropriate to explore the basis upon which the Derkay Construction Co., Inc. action was discontinued so that the record will adequately shed light on how the funds deposited to discharge that lien should be handled.

The orders and the judgment should be reversed, on the law and the facts, and in the interest of justice, and the matter remitted for further proceedings not inconsistent herewith, without costs.

STALEY, JR., J. P., SWEENEY, MAIN and REYNOLDS, JJ., concur.

Orders and judgment reversed, on the law and the facts, and in the interest of justice, and matter remitted for further proceedings not inconsistent herewith, without costs.