Harold Hyman, J.
This application is made by petitioner, Eminon Acoustical Contractors Corp. (Eminon) for an order pursuant to subdivision 5 of section 76 of the Lien Law directing respondents, Richkill Associates,-Inc., Approved Drywall Corp. and Benro Construction Corp. (Richkill, Approved and Benro, respectively) to serve upon it a verified statement.
Richkill and Benro cross-move to dismiss the petition pursuant to CPLR 3211 (subd [a], par 1) on the ground of an alleged release, and pursuant to CPLR 3211 (subd [a], par 7) and subdivision 5 of section 76 of the Lien Law to vacate the request.
The facts, as set forth in the moving and opposing papers, are:
In or about September, 1975 Richkill, as owner, entered into a contract with Benro, as general contractor for improvement of property located in Richmond County.
Benro employed Approved as a subcontractor, and Approved, as subcontractor, retained petitioner, Eminon, as its subsubcontractor. Petitioner had no direct agreement with the owner, Richkill.
On January 11-12, 1977 lienors, such as petitioner and persons who had claims for work or materials supplied to the premises, entered into a settlement or compromise agreement with Richkill; the latter, evaluating its claim at $37,638, agreed to accept and Richkill (owner) agreed to pay petitioner $23,000 in full payment of its claim, part of which it paid to petitioner on January 12, 1977; the balance is due on June 30, 1977. In consideration for this agreement petitioner, who had filed a mechanic’s lien on May 4, 1976, agreed that upon receipt of the January 12, 1977 payment to release its lien by executing certain instruments prepared by the owner and, also, "agreed not to make any claim or lien against the Premises or against any other party whatsoever * * * for work done or material furnished to the Premises prior to and including the date of such January, 1977 payment”; and, further, agreed to execute ’’general releases and other documents deemed necessary or desirable by your [Richkill] counsel in order to preclude the raising of any claim against the *994 Premises or any other party. ” Further, it represented to have executed such documents voluntarily with the assistance of counsel.
The first payment, on January 12, 1977, was made by Richkill to petitioner and acknowledged by petitioner.
In January of 1977, in accordance with the aforesaid compromise agreement petitioner issued and executed two satisfaction pieces of its mechanic’s liens against the premises, both totaling the amount of petitioner’s alleged claim. Each satisfaction of mechanic’s lien contains a clause which, after acknowledging that the lien has been paid and satisfied and that it consents to the discharge of said lien of record, also states: "The undersigned hereby covenants and agrees that it will not make claim on lien against the premises or against any other party whatsoever for work done or materials furnished to the Premises prior to January 12, 1977.”
Petitioner maintains that it only received 25% of its claim while its own contractor, Approved, received 90% of its claim and that was for work performed by petitioner. It is on such basis that petitioner maintains that it is entitled to a statement from each respondent pursuant to subdivision 5 of section 76 of the Lien Law. Petitioner also maintains that it was coerced into executing the agreement, the release and the covenant not to make claim or sue, based upon economic duress imposed upon it by respondents.
Subdivision 5 of section 76 of the Lien Law is part and parcel of article 3-A regarding trust claims. All provisions of this article must be considered together. (Onondaga Commercial Dry Wall Corp. v 150 Clinton St., 28 AD2d 71, revd on other grounds 25 NY2d 106.) Article 3-A was intended to create a special remedy that imposed a fiduciary relationship and responsibility upon an owner receiving money toward or for work or material supplied by others; its intention is to insure the equitable distribution of money paid toward the property’s improvement to those entitled to be paid (Putnins Constr. Corp. v Winston Woods at Dix Hills, 36 NY2d 679, affg 43 AD2d 667); it was enacted to create a trust-fiduciary relationship by owners or contractors for the benefit of subcontractors, the beneficiaries of the trust. (Frontier Excavating v Sovereign Constr. Co., 30 AD2d 487, App dsmd 24 NY2d 991.) But, it has been held, that regardless of the trust created by article 3-A it was never the intent of the Legislature that an owner paying the proceeds of moneys received to a contrac *995 tor has an obligation to make certain that funds be disbursed by the contractor to those entitled thereto, or even that the owner be a guarantor of payment to a contractor’s creditors (Onondaga Commercial Dry Wall Corp. v Sylvan Glen Co., 26 AD2d 130, affd 21 NY2d 739).
But what status can the present petitioner claim wdth regard to the premises? Can it, in the face of the compromise agreement, claim any status against the owner, Richkill? The agreement became self-executing upon petitioner’s receipt and acceptance of the first payment in January, 1977; not only were the petitioner’s liens fully satisfied pursuant to said agreement, but it also agreed not to make any claim or lien against the premises or against "any other party whatsoever” —for work done or material furnished to the premises prior to and including the date of such payment; and, petitioner also agreed to execute general releases. It seems to this court that such comprehensive language as "any other party * * * for work done to the Premises” prior to the date of the agreement forecloses any claim against all present respondents who were then engaged at the premises. It is the court’s opinion that the extent and verbiage of the release encompasses not only Richkill and Benro but also Approved within its ambit. (City Lithoplate v Baldwin Paper Co. 46 AD2d 770.) Since subdivision 5 of section 76 of the Lien Law allows only a "beneficiary” of the statutory trust to make request for examinations or for verified statements, it becomes apparent that petitioner no longer has any such status against the premises or the funds regarding same. As a matter of fact petitioner has no claim whatsoever, even if no lien, a basic requirement to become a beneficiary of the fiduciary relationship claimed. It may be that petitioner has another or different remedy, but as to the present application it is denied. The cross motion of respondents is granted. The petition is dismissed with taxable costs and disbursements.