**In re Joseph Frank GROSSO, f/d/b/a Gro-Co Utility Installation & formerly partner in GroCo Const. & Rigging, Debtor.**

**TRUAX & HOVEY, LTD., Plaintiff,**

v.

**Joseph Frank GROSSO, Defendant.**

**Bankruptcy No. 80 00263.**
**Adv. No. 80 0056.**

United States Bankruptcy Court,
N. D. New York.

March 16, 1981.

Welch, Welch & Carr, Syracuse, N. Y., for plaintiff; Anthony P. Adorante, Syracuse, N. Y., of counsel.

Robert S. Walczyk, Syracuse, N. Y., for defendant.

## MEMORANDUM–DECISION, FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

LEON J. MARKETOS, Bankruptcy Judge.

### Statement of the Case

On March 6, 1980, Joseph Frank Grosso (hereinafter, the Debtor) filed a Chapter 7

petition in bankruptcy. Pursuant to Rules 701(7) and 409(a)(2) of Bankruptcy Procedure, 11 U.S.C., Truax & Hovey, Limited (hereinafter, the Plaintiff) timely commenced an adversary proceeding on May 19, 1980. The complaint seeks to have a particular debt it holds against the Debtor declared nondischargeable, and judgment entered for the amount of the debt, plus interest, costs, and disbursements. The dischargeability complaint is premised on Section 523(a)(4) of the Bankruptcy Code, 11 U.S.C. § 523(a)(4).

The complaint's allegations read that: Between January of 1974 to August 9, 1974, the Plaintiff supplied to the Debtor insulation and drywall materials and labor for its installation in an improvement of real property located on Pangborn Road in the Thirteenth Township of Scriba's Patent, Oswego, New York. The total materials and labor had a billed value of $3,800.00. There still exists an outstanding unpaid balance of $1,857.12.

The complaint further alleges that: The Debtor, as defined under the New York Lien Law, was a general contractor. The Debtor is said to have received both mortgage proceeds and payments for the improvements. These proceeds are alleged to be impressed with a statutory trust under Article 3–A of the New York Lien Law; that said funds were never timely disbursed to the Plaintiff pursuant to an independent statutory duty imposed on the Debtor by Article 3–A of the New York Lien Law.

The Debtor filed an answer on June 23, 1980; he denied generally the allegations of the complaint. As separate and distinct affirmative defenses barring recovery to the asserted claims, the Debtor invokes the statute of limitations of (a) six (6) years under the New York Civil Practice Law and Rules, Section 213, and (b) one (1) year period under the New York Lien Law, Article 3–A, Section 77(2). The Debtor seeks to have judgment dismissing the Plaintiff's complaint. A trial on the pleadings was held.

## FINDINGS OF FACT

The facts of the case established by testimony and documents at the trial are, in substantial part, undisputed. They are as follows:

1. During the years 1973 to early 1974, the Debtor was Vice President of Gro-Co Construction and Rigging Company. The Debtor left this position when a new corporation, Gro-Co Utility, was formed. Yet, the Debtor continued with the Gro-Co Construction operations.

2. The Gro-Co business concern was operated by the Debtor and his brother. It commenced to build houses on a farm lot parcel delineated as "lot 27B" located on Pangborn Road, Thirteenth Township of Scriba's Patent, Oswego County, New York. This large parcel had been owned by the Debtor's father and transferred to the Debtor and his brother piecemeal. The smaller parcels, themselves, were not assets of the business concern, but were owned individually. The Gro-Co concern was to build houses on the smaller lots. According to the Debtor's testimony, this business concern ultimately filed for bankruptcy.

3. The Merchants National Bank & Trust Company made construction loans to the Debtor, taking as collateral, mortgages on each of his piecemeal lots. For example, one loan and mortgage between the Debtor and the Bank was in the amount of thirty-three thousand ($33,000.00) dollars, dated November 1, 1973. It covered "lot # 1". There was a "lot # 2" also with a deed in the name of the Debtor. The Debtor testified that these loans and mortgages were borrowed to do the necessary house construction on the lots. Both of the aforesaid lots were subsequently transferred out by deed to purchasers as completed houses.

4. The Debtor testified that the proceeds of these loans were to be

drawn on as the stages of work progressed and were completed on each lot.

5. The Debtor testified that all Gro-Co's construction efforts stopped in late July or August of 1974. Two houses, lots # 1 and # 2, had been completed. Other houses, e. g., lots # 3 and # 4, were incomplete. This cessation of work was said to be due to the Merchants Bank "taking over" by foreclosure on the latter houses. In the Debtor's belief, a general contractor was hired by the Bank to complete the sites. The Debtor stated that the Bank, prior to take over, refused to release any further progress payments under the building loans to Gro-Co. The reason was that lots # 3 and # 4 were not being completed on schedule.

6. The Plaintiff, Truax & Hovey, had a history of transactions with the Gro-Co Construction Company. The Plaintiff's witness, John Denny, Comptroller, testified that the Plaintiff's billings normally are rendered the month after work is supplied. The first billing to Gro-Co was dated on May 22, 1974 for $1,246.00, and the second billing was in June. Each was paid in June and July of 1974, respectively. The third through fifth billings, now in dispute, were billed on August 22, 1974.

7. A mechanic's lien was filed by the Plaintiff in November, 1974. Their counsel stated that this lien was cut off by the Merchants Bank foreclosing in October of 1974.

8. The Plaintiff's only proof for damages, i. e., (1) where, and (2) to whom services and materials were rendered, are three photocopy invoice billings, each dated August 22, 1974. These billings are addressed to "Gro Co Construction Co.". (Exhibit 2—invoices Nos. 10554, 10555,

and 10556 for the amounts of $539.12, $1,276.00, and $42.00 respectively). Invoice No. 10554 described the work rendered to " # 3 house Pinetree Road", No. 10555 covered work to "House # 4 ??(sic) Pinetree Road", and No. 10556 was work at " # 2 Repair—".

9. The Debtor orally controverted the fact that any installation services were rendered to lots # 1 and # 2, and that any work to lots # 3 and # 4 was authorized or requisitioned by Gro-Co Construction. By a preponderance of evidence presented relative to the commercial billing practices between these parties, this Court finds these billings to be true and accurate representations.

10. In accordance with rights given any trust beneficiary under Section 76, subd. 1. and 2. of Article 3–A of the New York Lien Law, a "DEMAND FOR STATEMENT RESPECTING TRUSTS RELATING TO IMPROVEMENTS" dated May 30, 1980, was sent to the Debtor by the Plaintiff's attorneys. The Debtor testified that he did not reply to the demand.

## CONCLUSIONS OF LAW

The Plaintiff is seeking to have a debt incurred by the supplying of materials and labor to the Debtor held nondischargeable pursuant to § 523(a)(4) of the Bankruptcy Code, 11 U.S.C. § 523(a)(4). That provision excepts from discharge in bankruptcy any debt proven to be

"(4) for fraud or defalcation while acting in a fiduciary capacity..." *Id.*

Article 3–A of the New York Lien Law (encompassing § 70 to § 79–a.) creates an express statutory trust. The article's provisions create the requisite fiduciary relationship contemplated within the terms of § 17(a)(4)[1] of the Bankruptcy Act of 1898,[2]

1. The pertinent portion of that provision reads:

"(a) A discharge in bankruptcy shall release a bankrupt from all his provable debts ... except such as ...

11 U.S.C. § 35(a)(4). See, *In the Matter of Kawczynski*, 442 F.Supp. 413 (W.D.N.Y. 1977); *In re Morris Ketchum, Jr. and Associates*, 409 F.Supp. 743 (S.D.N.Y.1975). In accordance with the reasoning of those holdings, this Court considers valid claims under Article 3–A of the New York Lien Law as within the "fiduciary capacity" element delineated in § 523(a)(4) of the Bankruptcy Code. Yet, it should be noted that all claims against fiduciaries are not non-dischargeable. § 17(a)(4) [and its successor, 11 U.S.C. § 523(a)(4)] expresses its concern for limiting non-dischargeability, even in the case of a fiduciary, to the dishonest debtor. *In re Harris I. Koritz*, 2 B.R. 408, 417, 6 Bankr.Ct.Dec. 47 (Bkrtcy.D.Mass. 1979). It is not applicable to every breach of duty, but only those involving serious misconduct that come under the headings of "fraud, . . . . and defalcation." *Id.* To promote the policy of "fresh start" to the debtor, the exceptions to dischargeability are to be strictly construed. The burden of proof is on the plaintiff to show that the debt should be excepted from discharge. *In re Kriger*, 2 B.R. 19, 21, 5 Bankr.Ct.Dec. 1380 (Bkrtcy.D.Oregon 1979).

### I.

■ Presuming the Plaintiff will prove his statutory trust claims under Article 3–A of the New York Lien Law, this Court must first examine the Debtor's asserted statute of limitations defenses.[3] Establishing the validity of either affirmative defense to the Plaintiff's claims will require this Court to dismiss the Plaintiff's complaint. In either state or federal courts, a debtor-defendant must bear the burden of proof to establish the elements of an affirmative defense of the statute of limitations. See, *Perez v. Costa Armartori, S. P. A.*, 465 F.Supp. 1211 (S.D.N.Y.1979); *Ludger Doyon v. Robert Bascom*, 38 App.Div.2d 645, 326 N.Y.S.2d 896 (3rd Dep't 1971); *Mead v. Warner Pruyn Division, Finch Pruyn Sales, Inc.*, 87 Misc.2d 782, 386 N.Y.S.2d 342 (Sup.Ct. Washington Co. 1976), *aff'd*, 57 App.Div.2d 340, 394 N.Y.S.2d 483 (3rd Dep't 1977).

■ Upon plaintiff's direct examination of the Debtor, it was shown that building loan agreements and mortgages were acquired for each of the individual lots. Each lot was to have a house constructed on it. Each billing invoice (Ex. 2) of the Plaintiff describes a singular lot to which materials and/or services were rendered. There was no proof at trial that the work by the Plaintiff at the several sites was encompassed collectively under a single contract between Gro-Co and the Plaintiff. This Court finds that each house built constitutes a "project" or "improvement of real property" as stated under § 70, subdivision 1. of the New York Lien Law. Therefore, the Plaintiff's complaint, in fact, is an action to impress several statutory trusts. Each numbered "lot" received mortgage proceeds which comprised *a separate and distinct trust.*

The cause of action to enforce the statutory trust and its statute of limitations under Article 3–A of the New York Lien Law are contained in § 77, subdivisions 1. and 2. They read:

"1. A trust arising under this article may be enforced by the holder of any trust claim, including any person subro-

---

* * * * * *

(4) were created by his fraud, embezzlement, misappropriation, or defalcation while acting . . . in any fiduciary capacity;"

**2.** The Bankruptcy Act of 1898 was repealed by the Bankruptcy Reform Act of 1978, Title IV, § 401(a). The latter Act is also now codified in Title 11 of the United States Code, and heretofore is referred to as the Bankruptcy Code.

**3.** The limitations period on state-created causes of action *must* be determined by reference to state law. See, *Walko Corporation v. Burger Chef Systems, Inc.*, 554 F.2d 1165, 180 U.S.

App.D.C. 306 (D.C. Cir. 1977), *certified question answered*, 378 A.2d 1110, 281 Md. 207, *supplemented*, 568 F.2d 1389, 186 U.S.App.D.C. 167 (D.C. Cir. 1977); *Ragan v. Merchants Transfer & Warehouse Company*, 337 U.S. 530, 69 S.Ct. 1233, 93 L.Ed. 1520 (1949); *Guaranty Trust Co. v. York*, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945). The question (1) when a state-created cause of action accrues or (2) how long the applicable limitations period ought to be, are governed by state law. *Walko Corporation v. Burger Chef Systems, Inc.*, supra, at 1171.

gated to the right of a beneficiary of the trust holding a trust claim, *in a representative action* brought for the benefit of all beneficiaries of the trust. An action to enforce the trust may also be maintained by the trustee. *In any such action*, except as otherwise provided in this article, the practice, pleadings, forms and procedure *shall conform* as nearly as may be to the practice, pleadings, forms and procedure in a class action.

2. Such action may be maintained at any time during the improvement of real property or public improvement and successive actions may be maintained from time to time during the improvement provided no other such action is pending at the time of the commencement thereof. *No such action shall be maintainable if commenced more than one year after the completion of such improvement*, except an action by the trustee for final settlement of his accounts and for his discharge." (Emphasis added) N.Y. Lien Law § 77, subd. 1. and 2. (McKinney 1966).

In the context of an improvement to real property subject to the trust provisions of Article 3–A, there may be, and often are, several beneficiaries, e. g., materialmen, engineers, architects, subcontractors, surveyors, and laborers,[4] under the trust. Most often, all these beneficiaries do not provide all their materials and/or labor concurrently to the improvement. The case at bar is in that pattern. Looking to § 77, subdivi-

sion 2., questions arise as to how to ascertain the commencement of the limitations period. Is the statute to be applied to each trust beneficiary's contribution, or is the statute read to take effect and run from a singular "completion" date?

This Court reads the New York cases [5] which have construed the phrase ". . . after the completion of such improvement" in actions brought under § 77 of the Lien Law to mean at the completion of the *entire*[6] improvement or undertaken project. Also, absent undisputed allegations, affidavits, and/or admissions, the question of when an improvement or project was completed so as to commence the running of the statute of limitations is one of fact to be determined at trial. *Utica Sheet Metal Corporation v. Myers-Laine Corporation*, supra (fn. 5) at 119, 357 N.Y.S.2d 137; *Northern Structures, Inc. v. Union Bank*, supra (fn. 5) at 368, 394 N.Y.S.2d 964; see also, *The Ingalls Iron Works Company v. Fehlhaber Corporation*, supra (fn. 5) at 282.

This Court concludes that the claim pertaining to lot # 2 is barred by the one year statute of limitations in § 77, subdivision 2. of the Lien Law. That lot's project was completed in 1974 commencing the one year period. The complaint containing this statutory trust claim was filed on May 19, 1980. No evidence was adduced at trial to persuade this Court to toll the running of the limitations period.

---

4. New York Lien Law, § 71, subd. 2(a) (McKinney 1966).

5. See, *Northern Structures, Inc. v. Union Bank*, 57 App.Div.2d 360, 368, 394 N.Y.S.2d 964, *amended*, 58 App.Div.2d 1042, 396 N.Y.S.2d 1021 (4th Dep't 1977); *Utica Sheet Metal Corporation v. Myers-Laine Corporation*, 45 App. Div.2d 116, 119, 357 N.Y.S.2d 137 (3rd Dep't 1974) ("if it is found that the project—not merely the work performed by the plaintiff—was completed within one year . . ."); *in accord, Wynkoop v. Mintz*, 17 Misc.2d 1093, 1096, 192 N.Y.S.2d 428 (Sup.Ct.Sp.T. Kings Co. 1958); *The Ingalls Iron Works Company v. Fehlhaber Corporation*, 327 F.Supp. 272, 282 (S.D.N.Y.1971).

6. A literal meaning is given to the word "completion". In fact, the New York courts have

denied arguments that have attempted to equate "substantial" completion, discharge, or abandonment of the improvements by the trustee-defendant as commencing the running of the limitations period. See, e. g., *Northern Structures, Inc. v. Union Bank*, supra (fn. 5) (substantial completion); *Forest Corporation et al. v. Century National Bank & Trust Company*, 70 Misc.2d 190, 191, 333 N.Y.S.2d 644 (Sup.Ct. Sp.T.N.Y.Co.1970) (discharge); *Putnins Contracting Corporation v. Winston Woods at Dix Hills, Inc. et al.*, 72 Misc.2d 987, 989, 340 N.Y. S.2d 317 (Sup.Ct.Sp.T. Nassau Co. 1973), *aff'd without opinion*, 43 App.Div.2d 667, 349 N.Y. S.2d 652 (2nd Dep't 1973), *aff'd*, 36 N.Y.2d 679, 365 N.Y.S.2d 853, 325 N.E.2d 169 (1975) (abandonment).

For cases where the project has not been completed and is abandoned by the trustee-contractor, a New York Appellate Division court has stated, in dictum, that the "catchall" statute of limitations period of six (6) years prescribed by the New York Civil Practice Law and Rules, § 213, subdivision 1. is applicable. *Putnins Contracting Corporation et al. v. Winston Woods at Dix Hills, Inc. et al.*, supra (fn. 6) at 989, 340 N.Y.S.2d 317. As to the claims pertaining to lots # 3 and # 4, the Debtor testified that his construction business left the project incomplete in July or August of 1974. This occurrence appears to be an abandonment and/or discharge of the project and places said claims within the six year period. They are hereby held to be timely and the affirmative defense concerning these claims is hereby stricken.

### II.

The Court now addresses the Plaintiff's case and proof. First, the Plaintiff must establish that he possesses an outstanding trust claim against the Debtor, as defined under Article 3–A of the New York Lien Law. Second, that trust claim or debt must be shown to have resulted from "fraud or defalcation" by the Debtor to qualify his claim under § 523(a)(4) of the Bankruptcy Code.

This Court finds that the statutory cause of action for trust claims under Article 3–A requires a requisite set of proof and procedural elements. They are:

1. THE CIVIL ACTION SHOULD BE BROUGHT BY THE PLAINTIFF IN A REPRESENTATIVE CAPACITY FOR THE BENEFIT OF ALL TRUST BENEFICIARIES. (§ 77, subd. 1.)

The procedural prerequisite that the § 77 action be brought in a representative form of complaint is not to be obviated. The New York legislative purpose is express and clear in § 77, subd. 1. The New York courts explicate the underlying purposes of Article 3–A. The statutory trust

"... is intended *to insure* that money paid toward the improvement *is equitably shared* by those entitled to be paid." (Emphasis added) *Putnins Contracting Corporation et al. v. Winston Woods at Dix Hills, Inc., et al.*, supra (fn. 6), at 990 [340 N.Y.S.2d 317].

The fact that such a cause of action is brought in the federal bankruptcy court is not a ground to ignore this expressly stated form of action. If successful, a plaintiff will prove the existence of a trust which is property outside the debtor's estate. § 541(c)(2) of the Bankruptcy Code, 11 U.S.C. § 541(c)(2); see, *Selby v. Ford Motors Company*, 590 F.2d 642, 648 (6th Cir. 1979). Repetitive subsequent litigation by similarly situated creditor-parties can be avoided. But for the amount of the trust claim and its incurrence, all beneficiaries will have numerous identical items of proof.

There can be no question that a creditor of a debtor may bring a class or representative form of action in the bankruptcy court in an adversary proceeding. See, Rule 723 of Bankruptcy Procedure, 11 U.S.C., incorporating Federal Rule 23 of Civil Procedure.

Although this error, alone, does not warrant dismissal on the merits,[7] the consequence of such improperly formed pleadings is that a further hearing, i. e., a continuance, would be required to determine whether or not there are other beneficiaries of the trust. *In re Hoffman & Walker Fire Protection Corp.*, BK–75–2640, p. 11 fn. 4 (Bankr.Ct.N.D.N.Y. Feb. 7, 1979).

2. IT MUST BE SHOWN THAT THE PLAINTIFF PROVIDED SERVICES AND/OR MATERIALS TO AN IMPROVEMENT TO REAL PROPERTY TO QUALIFY AS A "COST OF IMPROVEMENT" (§ 2, subd. 5.) AND CONSTITUTE A TRUST CLAIM. (§ 71, subd. 3.)

The Court is satisfied that this element has been met. See, Exhibit 2—Invoices.

---

7. See, *Dittmar Explosives Inc. v. A. E. Ottaviano, Inc.*, 20 N.Y.2d 498, 502, 285 N.Y.S.2d 55, 231 N.E.2d 756 (1967) (in dictum: a New York trial court could permit an amending of the complaint during *or even after trial* to allege a claim under the trust provisions of the Lien Law); see also, N.Y.C.P.L.R., § 3025(b) and (c); Fed.Civ.Proced.Rule 15(b).

824

3. THERE MUST BE ALLEGATIONS OF NONPAYMENT OF SERVICES AND/OR MATERIALS RENDERED TO THE IMPROVEMENT.

The Plaintiff provided competent testimony by its comptroller that the account and payment cards concerning Gro-Co Construction Company did and still do have a balance outstanding and owing. The Court finds this fact was not sufficiently controverted by the Debtor.

4. THE PLAINTIFF MUST QUALIFY AS A TRUST BENEFICIARY UNDER THE STATUTE. (§ 71, subd. 2(a) to (e) relating to subd. 4.)

■ Upon the pleadings, documents, and testimony introduced at trial, the Court finds the Plaintiff qualifies as a statutory trust beneficiary under the express provisions of § 71, subd. 2(a) relating to subd. 4.

5. THE NAMED DEFENDANT MUST BE SHOWN TO QUALIFY AS A TRUSTEE OF THE STATUTORY TRUST. (§ 71, subd. 1.)

No one other than an owner, contractor, or subcontractor is designated as a prospective trustee in Article 3–A of the Lien Law. *In the Matter of ALB Contracting Co., Inc. v. York-Jersey Mortgage Company and Lockport Construction Co., Inc.*, 60 App. Div.2d 989, 401 N.Y.S.2d 934 (4th Dep't 1978); N.Y.Lien Law, § 70, subd. 2. A legal issue presented is whether this Debtor is the proper party-trustee who owes fiduciary duties to the Plaintiff?

This question arises because the Debtor was the owner of various individual lots on which the "building loan contracts" and mortgages were collateralized. In contradistinction, the Plaintiff has testified and documented that its billings run to the corporate general contractor, Gro-Co. Debtor's counsel notes that the Debtor resigned from his corporate position early in 1974. Yet, the Debtor testified that he continued with the Gro-Co operations in a non-officer capacity.

■ By operation of the law, an owner of real property who receives proceeds of a "building loan contract" or "building loan mortgage" is a statutory trustee of those proceeds. N.Y.Lien Law, § 70, subd. 5(a) and (b) (McKinney 1966). It has been held that regardless of the trust created by Article 3–A it never was the intent of the New York legislature that an owner, as a statutory trustee paying the proceeds of moneys received to a contractor, has an obligation to make certain that funds be disbursed by the contractor to those entitled thereto, or even that the owner be a guarantor of payment to a contractor's creditors. *Eminon Acoustical Contractors Corp. v. Richkill Associates, Inc. et al.*, 89 Misc.2d 992, 994–95, 392 N.Y.S.2d 1007 (Sup.Ct.Sp.T. Queens Co.1977) citing *Onondaga Commercial Dry Wall Corporation v. Sylvan Glen Co.*, 26 App.Div.2d 130, 271 N.Y.S.2d 523 (4th Dep't 1966), *motion denied*, 20 N.Y.2d 799, 284 N.Y.S.2d 455, 231 N.E.2d 131, *aff'd*, 21 N.Y.2d 739, 287 N.Y.S.2d 886, 234 N.E.2d 840 (1968). Yet, this Court finds that principle inapplicable to the particular facts of the case at bar. The principle is premised on a fact pattern where the owner was *not* a party related or identical to the general contractor.

■ The Debtor's counsel presents facts which this Court regards and rejects as an argument of form over substance. Once the Debtor received any proceeds as owner, he became a statutory trustee to the extent of the funds received. His fiduciary duties are imposed by law for which he has constructive notice. His transfer of proceeds to the corporate general contractor, Gro-Co, is permissible. (§ 71, subd. 3(a)). Yet, such transfer does not relieve him of having constructive notice of the trust nature of those funds.

The Court is of the belief that the Debtor's continued involvement with Gro-Co operations warrants a continuation of his statutory trustee duties. Therefore, the Debtor's resignation from the corporate general contractor is irrelevant vis-a-vis his personal liability for the proper disbursement of Article 3–A trust funds. Any person who knowingly causes misappropriation of trust property by a corporation is personally lia-

ble for participation in a breach of trust. *Schwadron v. Freund*, 69 Misc.2d 342, 348, 329 N.Y.S.2d 945 (Sup.Ct. Rockland Co. 1972) and cases and authorities cited therein. The Court finds that the Debtor is a proper party-statutory trustee answerable to the Plaintiff. See, also, *Fleck d/b/a Fleck Roof & Siding Company v. Perla*, 40 App.Div.2d 1069, 1070, 339 N.Y.S.2d 246 (4th Dep't 1972); *Scriven v. Maple Knoll Apartments, Inc.*, 46 App.Div.2d 210, 361 N.Y.S.2d 730 (3rd Dep't 1974).

### 6. THE TRUST "RES" (i. e., assets) MUST QUALIFY UNDER THE STATUTE (§ 70, subd. 5(a)–(f)).

▮ The funds received by a statutory trustee must be of a nature delineated under one of the categories of subdivision 5 of § 70, e. g., a "building loan contract" or a "building loan mortgage". *Kingston Trust Company v. Catskill Land Corporation*, 43 App.Div.2d 995, 996, 352 N.Y.S.2d 514 (3rd Dep't 1974). The owner-Debtor testified that the improvements being made were financed by Merchants Bank's providing building loans. The Court is satisfied that the source of the "res" fits either § 70, subd. 5(a) or (b).

### 7. THE TRUSTEE MUST BE SHOWN TO HAVE RECEIVED THE "RES".

▮ The underlying purpose of Article 3–A of the Lien Law is to prevent an owner or general contractor from *pocketing* construction loan proceeds for his own benefit when those who have added value to the improvement are deprived of a source of payment. *Fentron Architectural Metal Corporation v. Solow*, 101 Misc.2d 393, 396, 420 N.Y.S.2d 950 (Sup.Ct.Sp.T.N.Y.Co.1979). The trust fund is that portion of the loan received by the owner or contractor. *Caledonia Lumber & Coal Company, Inc. v. Chili Heights Apartments and Sibley Corporation*, 70 App.Div.2d 766, 417 N.Y.S.2d 536 (4th Dep't 1979).

Testimony of the Debtor indicates that the mortgage proceeds were drawn after various stages of construction had been completed. This form of a conditional commitment is common in the industry and it is not to be equated with a situation where the *entire* mortgage proceeds are released to the contractor at the beginning of the project. See, e. g., *Onondaga Commercial Dry Wall Corp. v. Sylvan Glen Co., Inc.*, supra (owner had conditional commitment to receive a total of $385,000.00 while proof showed it received only $310,000.00 from the mortgagee).

In a "progress payment" finance arrangement it cannot be presumed that the full value of the recorded mortgage was released to the mortgagor. The Plaintiff has failed to prove the amount of funds which were received by the trustee comprising the statutory trust or trusts.

### 8. A DIVERSION OF TRUST ASSETS MUST BE ESTABLISHED. (§ 72, subd. 1.)

▮ It is relevant to both the validity of the trust claim and the defalcation [8] component of the § 523(a)(4) exception to discharge that there be a showing of diversion of trust assets. The aforesaid legal conclusion can only arise if factual proof is presented showing the application of trust assets for non-trust purposes. The fiduciary bookkeeping duties imposed on a trustee by § 75 of the Lien Law apparently exist to aid in that determination.

No facts were presented to the Court showing the nature or extent of a non-trust application of statutory trust funds. *Contrast, Naiztat Iron Works, Inc. v. Tri-Neck Construction Corp.*, 62 Misc.2d 228, 308 N.Y. S.2d 427 (Sup.Ct.Sp.T. Kings Co. 1970); *In the Matter of Kawczynski*, supra. At trial, the Plaintiff sought to invoke the statutory presumption of diversion stated in the Lien Law, § 75, subd. 4 and § 79–a., subd. 3, which arises by virtue of the Debtor's failure to answer the Plaintiff's "Verified Statement Demand" dated May 30, 1980.

▮ As a court of law and equity,[9] this Court must scrutinize the circumstanc-

---

8. See, *In the Matter of Kawczynski*, supra, at p. 417–18.

9. 28 U.S.C. § 1481.

es surrounding the Plaintiff's invocation of the statutory presumption of diversion of trust funds. First, the service of such a demand after the Debtor's bankruptcy filing is in direct violation of the automatic stay provision, § 362(a)(6) of the Bankruptcy Code, 11 U.S.C. § 362(a)(6).[10] This Court might reasonably consider the service of the demand and its accompanying evidentiary presumption as a nullity.[11]

▉ Second, it appears to this Court that the demand, itself, suffers from the infirmity of insufficiency. It has been held that a request for a verified statement under § 76 of the Lien Law must strictly comply with subdivision 2 of that section.[12] That subdivision requires a description of the particular improvement. See, *In the Matter of Warebak Realty Corporation v. Enro Construction Corporation*, 39 Misc.2d 298, 240 N.Y.S.2d 193 (Sup.Ct.Sp.T. Queens Co. 1963). That court noted that it is conceivable to have two improvements upon the same real property with possibly resultant separate trusts.

This Court noted, supra at Part I, p. 7, that the Plaintiff's evidence illustrates an effort to enforce numerous separate trusts attaching to various numbered lots. The demand's insufficiency is clear in its paragraph "(a)" for it makes trust claims to "The improvement" on "Lot # 27". That description encompasses numerous improvements on lots # 1 through # 7, owned by both the Debtor and a non-debtor, his brother. These lots are held in each's individual capacity. Observing that the Plaintiff's evidence makes express reference to lots # # 2, 3 and 4, the aforesaid description is overly broad and inexact. The Court

finds that such a demand by its very nature is a nullity and its service would not support a commencement of the ten day statutory answering period in § 76, subd. 4. of the Lien Law. The condition precedent to establishing the statutory presumption has not been met by the Plaintiff.

▉ Lastly, assuming, arguendo, that the statutory presumption were to be operative, the Court takes issue with counsel's position as to its operative ramifications. Plaintiff's counsel asserts that the aforesaid statutory presumption places the burden of proof on the Debtor. This is incorrect. It appears that the presumptions in § 75, subd. 4 and/or § 79–a, subd. 3 are to be treated

"... *as only a permissible inference* that defendants, by failing to keep statutorily prescribed records, used trust funds for other than authorized trust purposes." (Emphasis added) *The People of the State of New York v. Lawrence Rosano, Michael Newmark, et al.*, 50 N.Y.2d 1013, 1016, 431 N.Y.S.2d 683, 409 N.E.2d 1357 (1980), *aff'ing*, 60 App.Div.2d 643, 419 N.Y.S.2d 543 (2nd Dep't 1979).

This Court finds that the inference of diversion is not permissible under the particular facts of this case. The Debtor testified that the corporation to which the Plaintiff's billings are addressed filed for bankruptcy in 1975. Therefore, the trustee in bankruptcy would have obtained exclusive control of all corporate records depriving the Debtor, five years hence, of the ability to timely comply with the Demand in accordance with § 76, subd. 4. At various instances in the trial, the Debtor remarked that he could not re-

---

**10.** § 362(a)(6) reads in part:

"(a) ... a petition filed .. operates as a stay, applicable to all entities, of—

\*   \*   \*   \*   \*   \*

(6) any act to collect, *assess*, or recover a claim against the debtor that arose before the commencement of the case under this title;" (Emphasis added).

**11.** *In the Matter of Union Hill Cash & Carry Lumber Co., Inc. v. Peter P. Lesco d/b/a P–L Construction Co.*, 21 App.Div.2d 738, 249 N.Y. S.2d 1011 (4th Dep't 1964) (re: motion to compel verified statement under § 76 of the Lien

Law. The court observed that judicial proceedings to enforce this statutory right could not have been taken in the state court without permission of the bankruptcy court); *in accord,* 2 Collier on Bankruptcy, para. 362.04(6) (15th ed. 1979).

**12.** N.Y.Lien Law, § 76, subd. 2. (McKinney 1966) reads in part: "The request shall contain a statement of the name and address of the beneficiary, a description of the improvement of real property .... sufficient to identify it and to identify the trust ..."

call various facts. After observing the Debtor and his manner of testifying, the Court believes him. The staleness of the claims now asserted and the surrounding transactions warrant a break in the rational relationship between the proven fact and the statutory inference.

## CONCLUSION

Upon the record presented, this Court is left with an equivocal explanation for nonpayment to this statutory trust beneficiary. The nonpayment result might very well arise from the exhaustion of all trust assets before payment to this particular claimant. The statute gives no scheme or method by which the trustee must disburse payments to valid trust purposes.[13] The element of cost overrun in a construction project invariably will accelerate the exhaustion of trust assets. See cases, e. g., *Fentron Architectural Metal Corporation v. Solow*, 101 Misc.2d 393, 396, 420 N.Y.S.2d 950 (Sup.Ct.Sp.T.N.Y.Co.1979) and *Sousie v. Williams*, 97 Misc.2d 532, 411 N.Y.S.2d 861 (Sup.Ct.Sp.T. Rensselaer Co. 1979). When the amount properly going into the improvement equals the amount which, according to the building loan agreement, should go into the improvement, there is no diversion. *United Lakeland Air Conditioning Co. v. Ahneman-Christiansen, Inc.*, 33 Misc.2d 606, 613, 226 N.Y.S.2d 532 (Sup.Ct. Sp.T. Nassau Co. 1962), *aff'd*, 18 App.Div.2d 1022, 239 N.Y.S.2d 38 (2nd Dep't 1963). The evidence *is not* that the Debtor never paid any billings. In fact, the Gro-Co account was current until the simultaneous third, fourth, and fifth billings were made in late August of 1974. This time period also coincides with the Debtor's testimony as to when the Merchants Bank ceased progress payments.

The Court is not persuaded by a preponderance of the evidence that:

(1) any certain amount can be ascribed to the Debtor-trustee's statutory trust; and

(2) that the Debtor diverted any "received proceeds" from the building loan agreements;

By reason of the foregoing findings of fact and conclusions of law, therefore, it is

ORDERED that the Plaintiff's complaint, in its entirety, be and the same is hereby dismissed.

---

**13.** See N.Y.Lien Law, § 74, subd. 1. (McKinney 1966) (trustee has authority "to determine the order and manner of payment of any trust claims and to apply any trust asset to any purpose of the trust"); *Frontier Excavating Inc. v. Sovereign Construction Company, Ltd. of New Jersey*, 30 App.Div.2d 487, 490, 294 N.Y.S.2d 994 (4th Dep't 1968).