A. Franklin Mahoney, J.
This lien foreclosure action was tried before the court on stipulated facts, a pertinent summary of which is as follows:
On June 19, 1962 the defendant State entered into a contract with Robert R. Ritter, doing business as The Forest Co. (Forest) for the construction of a highway in Richmond County. Thereafter Forest entered upon the performance of the contract, HC 6426, until on or about September 18, 1963 when, because of financial difficulties, it abandoned the project. On October 3, 1963 the defendant State declared Forest in default and terminated the contract. Thereafter the State entered into a contract for the completion of the project with Slattery Construction Co., Inc. and accepted the project as completed on October 4, 1965. As of that date the retained moneys due to Forest under the original contract in the amount of $431,144.93 were properly applied by the State in diminution of its excess completion costs under the contract with Slattery. Five years later, after the State had made a demand against Forest and its surety, the plaintiff herein, for additional excess costs of completion in the sum of $1,298,023.69, exclusive of money earned and certified by the State as due Forest for work and material supplied to the construction site before default in the sum of $101,348.58, the State executed a general release to the favor of Forest and its surety releasing them from all liability in the sum of $950,000. Next, the plaintiff herein as surety on the statutory labor and material payment bond, made payments to lienors in the amount of $763,294.06, and took assignments of the liens filed against Forest. The defendant State is owed by Forest $63,360.68 for unpaid withholding taxes and unemployment contributions, plus interest.
Squarely presented by the summary are the relative rights of two classes of claimants to the sum of $101,348.58 presently retained by the State and concededly owed to and the property of Forest, the defaulting contractor. The resolution of this issue requires a judicial determination delineating the respective rights of a subrogated surety of materialmen and a sovereign with respect to a fund owed to a contractor who incurred the materialmen obligations but to whom the money has not yet been paid by the owner, in this case the State. If the fund should be first applied to the claim of the subrogated surety, it will be exhausted and nothing will be left for the State. If the opposite should obtain only $38,000 would be left to satisfy the opposite should obtain, only $38,000 would be left to satisfy subrogated surety and the State can only be resolved by deter *983 mining if the State as owner of realty upon which a public improvement in the nature of a highway was being constructed (Lien Law, § 2, subd. 7) came into possession of funds as trustee for its own benefit pursuant to the provisions of article 3-A of the Lien Law. In my view it did not.
Subdivision 1 of section 71 of article 3-A of the Lien Law states, “ The trust assets of which an owner is trustee under subdivision five (a) to five (f), inclusive, of section seventy of this chapter shall be held and applied for payment to the cost of improvement.” Paragraphs (a) to (f), inclusive, of subdivision 5 of section 70 state, “ The assets of the trust of which the owner is trustee are the funds received by him and his rights of action for payment thereof
“ (a) under a building loan contract;
“ (b) under a building loan mortgage;
“ (c) under a mortgage recorded subsequent to the commencement of the improvement and before the expiration of four months after completion of the improvement;
“(d) as consideration for a conveyance recorded subsequent to the commencement of the improvement and before the expiration of four months after the completion thereof;
“(e) as consideration for, or advances secured by, an assignment of rents due or to become due under an existing or future lease or tenancy of the premises that are the subject of the improvement, or of any part of such premises, if the assignment is executed subsequent to the commencement of the improvement and before the expiration of four months after the completion of the improvement or if it is executed before the commencement of the improvement and an express promise to make an improvement, or an express representation that an improvement will be made, is contained in the assignment or given in the transaction in which the assignment is made;
“ (f) as proceeds of any insurance payable because of the destruction of the improvement or its removal by fire or other casualty, except that the amount thereof required to reimburse the owner for premiums paid by him out of funds other than trust funds shall not be deemed part of the trust assets; ”
Clearly, the State as owner never came into possession of any funds via the routes described in the above-quoted paragraphs, nor did it hold any moneys as trustee under the provisions of paragraph (g) of subdivision 5 of section 70 of the Lien Law. This is not to say that the State as owner cannot credit itself with any retained percentage money held as security against job completion or any unpaid contract balance if it has *984 suffered any loss because of fault of the contractor. Bather, it is to .say that an owner cannot retain or credit itself with money certified as due the contractor for work performed and approved. Such a fund is owned by the contractor either directly if paid or constructively if owed and unpaid and, further, falls within the definition of funds ‘ ‘ received by a contractor under or in connection with a contract * # * for a public improvement in this state * * * and any right of action for any such funds due or earned * * * shall constitute assets of a trust for the purposes provided in section seventy-one of this chapter ” (Lien Law, § 70, subd. 1; emphasis supplied). Subdivision 2 of section 71 of the Lien Law provides that, “ The trust assets of which a contractor * * * is trustee shall he held and applied for the following expenditures arising out of * * * the public improvement and incurred in the performance of his contract * * * as the case may be: (a) payment of claims of * * * laborers and material-men”.
In the absence of any statutory rearrangement of priorities in the event of contractor default, after he has earned a part payment, it can be safely held that the money earned, whether paid or owed, is trusted for the benefit of materialmen lienors to the exclusion of tax claims. In Onondaga Commercial Dry Wall Corp. v. 150 Clinton St. (25 N Y 2d 106, 111) Judge Bekgan held that “ when valid liens are filed against property, the procedural mechanism for their enforcement by substituting a balance due on the contract * * * does not convert such a fund into a ‘ trust fund ’ under article 3-A so as to affect adversely the claims of lienors.” Similarly, in Hall v. Blumberg (26 A P 2d 64, 67) a unanimous court, held “ the better rule would seem to be that the perfection of the mechanic’s lien removes any assets which are the subject of such a lien, from the scope of an article 3-A trust.” The court further held that a satisfaction of such a lien from money paid to or owed the contractor could not be deemed a diversion or ‘1 unauthorized preference.” Finally, the Court of Appeals in Aquilino v. United States, of Amer. (10 N Y 2d 271, 282) stated, “ Our conclusion, then, is that, as a matter of New York law, a contractor does not have a sufficient beneficial interest in the moneys, due or to become due from the owner under the contract, to give him a property right in them, except insofar as there is a balance remaining after all subcontractors and other statutory beneficiaries have been paid.”
It would appear then that as to money earned by and owed to a contractor by an owner there is no trust created under *985 article 3-A of the Lien Law favoring tax claimants to the detriment of subcontractors or lienors, including those subrogated to such claims or liens, as the plaintiff herein.
While it is true that in each of the cases cited the owner was a private individual or enterprise, I see no difference in result where, as herein, the owner is a sovereign (see Lien Law, § 2, subds. 3, 7).
Judgment is directed to be entered in favor of the plaintiff foreclosing the subrogated public improvement liens to the extent of the fund available.