*940 OPINION OF THE COURT
Marvin E. Segal, J.
By order to show cause dated December 6, 1990, the plaintiff moved, in part, for an order, pursuant to section 76 (5) of the Lien Law, directing the defendants to serve a verified statement setting forth the entries with respect to the books and records maintained by the defendants for the Lien Law trusts, established by law, for certain improvements to real property described in the complaint. By order dated March 4, 1991, the Honorable Robert Roberto, Jr., determined that the application could not be decided without a hearing. Justice Roberto referred the matter to Special Term, Part II for a hearing on the application. Accordingly, a hearing was held by the undersigned Justice in Special Term, Part II on April 15, 1991. At the conclusion of the hearing, the court reserved decision. Both sides were afforded an opportunity to submit additional memoranda of law. Said memoranda were received by the court on May 13, 1991. Based upon the testimony adduced at the hearing and the papers submitted herein, the court makes the following findings of fact and conclusions of law.
Article 3-A of the Lien Law was enacted to insure that an owner or contractor utilized funds borrowed to improve real property for the intended purpose. The legislative intent was to prevent the diversion of construction loan proceeds to other uses, on the basis that such diversion has the potential and actual consequence of leaving those who did the work which added value to the real property, deprived of a source of payment. The device or remedy chosen by the Legislature in an effort to prevent this consequence was the statutory enactment of article 3-A, and its requirement that funds, provided by financing, for the purpose of the construction of improvements to real property, be held in trust by an owner or contractor. The owner or contractor is a statutory trustee for the benefit of subcontractors, laborers and materialmen who are the beneficiaries of a trust fund comprised of loan proceeds received by an owner from a lender, or by a contractor from an owner. (See, Caledonia Lbr. & Coal Co. v Chilli Hgts. Apts., 70 AD2d 766; Frontier Excavating v Sovereign Constr. Co., 30 AD2d 487, appeal dismissed 24 NY2d 991; Teman Bros. v New York Plumbers’ Specialties Co., 109 Misc 2d 197; 1959 Report of NY Law Rev Commn, at 209, 214.) An owner or contractor is a statutory trustee, however, only of funds which are specifically delineated under one of the categories of *941 section 70 (5) of the Lien Law. (In re Grosso, 9 BR 815; Kingston Trust Co. v Catskill Land Corp., 43 AD2d 995; Hartford Acc. & Indem. Co. v Ritter, 69 Misc 2d 981.) Funds from sources other than those delineated in Lien Law § 70 (5), such as owner’s capital, are not trust funds and are not subject to article 3-A of the Lien Law. (Bristol, Litynski, Wojcik v Elliott, 107 Misc 2d 1005; see also, Kingston Trust Co. v Catskill Land Corp., supra; G & B Lab. Installation v Beekman Downtown Hosp., 66 Misc 2d 441.)
Section 76 of the Lien Law provides that upon the request of a beneficiary of a trust, the trustee must furnish a verified statement of the entries made in books and records with respect to funds which constitute statutory trust funds. The purpose of this statute is to enable a trust beneficiary to ascertain the disposition of financing allocated for a construction project. This provision is in accord with the objective of the Legislature to insure that funds received by an owner will be used for the purpose for which the funds were borrowed. At issue herein is whether or not the defendants are statutory trustees of certain funds, and whether or not they are obligated to provide plaintiff with disclosure of the expenditure of said funds.
On or about June 25, 1987, the defendant, Whitestone Equities Farmingdale Corp. and Tesi Associates, Inc., both New York corporations, executed a written agreement forming a general partnership to be conducted under the name Farmingdale Partners. The limited purpose of said partnership was to acquire and develop certain real property in Farmingdale, Nassau County, New York. In or about August 1987, the plaintiff commenced work in grading, excavating and clearing the aforementioned real property. Plaintiff continued doing such work on the property, including the installation of drainage and drywells through August 1990. There was no written contract between the plaintiff and Farming-dale Partners. Plaintiff asserts that the total agreed price for the work was $94,145 plus $4,500 for certain manhole covers. Plaintiff claims a balance due from Farmingdale Partners of $51,395 plus $4,300 for the manhole covers.
Farmingdale Partners built only one model and two residences. There were no completed sales, and deposits paid on sales contracts have been returned to prospective buyers. Work on the project has ceased. The defendant, Whitestone Equities Farmingdale Corp., is a wholly owned subsidiary of the Whitestone Federal Savings and Loan Association. White- *942 stone Federal Savings and Loan Association is presently under the sole receivership of the Resolution Trust Corp. The plaintiff has filed a mechanic’s lien relative to the sums due and owing for work performed in the subject property at the behest of Farmingdale Partners.
In July 1990, pursuant to Lien Law § 76, the plaintiff demanded a verified statement setting forth the entries with respect to the books and records maintained for the Lien Law trust for the subject project. Farmingdale Partners responded to the extent of furnishing a statement delineating the expenditure of funds totaling $565,711, referenced to two building loans made by Whitestone Federal Savings and Loan to Farmingdale Partners, in the amount of $545,000. The sum of $1,100,000 was paid by Whitestone Equities Farmingdale Corp. to Farmingdale Partners to purchase and develop the subject real property. The defendants contend that this sum constitutes a capital contribution by Whitestone Equities Farmingdale Corp., and that said sum is therefore not subject to provisions of the Lien Law. Plaintiff contends that the $1,100,000 was, in fact, a loan advanced by Whitestone Federal Savings and Loan to Farmingdale Partners; that all sums advanced by a lending institution for the purpose of improvement to real property are trust funds subject to the provisions of the Lien Law; and that plaintiff is, therefore, entitled to a verified statement of the entries with respect to the books and records maintained regarding these funds.
The plaintiff bases its application herein for disclosure, pursuant to Lien Law § 76, of the disposition by defendants of the aforesaid $1,100,000 on two theories. First, the plaintiff contends that a Federal savings and loan institution is prohibited by Federal law from investing its capital in a project such as the development of real property herein. Plaintiff argues that if such investment is contrary to law, then the funds in question herein were, in fact, a loan, not a capital contribution, and that said funds, therefore, constitute funds delineated as trust funds pursuant to Lien Law § 70 (5). The plaintiff argues further that the agreement dated June 27, 1987, whereby Farmingdale Partners was formed, provides that the funds in question were a loan rather than a capital contribution.
Regarding plaintiff’s first contention, both sides agree that 12 USC § 1464, entitled "Federal Savings Associations”, limits permissible investments of a Federal savings and loan institution. Plaintiff asserts that a Federal savings and loan institu *943 tian is prohibited by 12 USC § 1464 from owning closed corporation stock, except in relation to investments in low- and moderate-income housing projects. 12 USC § 1464 (c) (4) (B), however, permits a Federal savings and loan institution to invest in the capital stock of a corporation organized under the laws of the State in which the Federal savings association’s home office is located. 12 CFR 545.74 (c) specifically authorizes a Federal savings and loan institution to invest in a service corporation, and sets forth the regulations structuring the permissible activities of said corporation. Federal regulation clearly permits a service corporation to participate in a joint venture for the purpose of acquiring real estate for development and resale. (12 CFR 545.74 [a] [3]; [c] [3] [vi].) Plaintiff’s contention that the funds in question herein should be deemed a "loan” by the court, on the basis that Whitestone Federal Savings and Loan Association was prohibited by Federal law from investing in a project to acquire, develop and resell real property, clearly lacks merit. Whitestone Federal Savings and Loan invested capital in its wholly owned subsidiary, Whitestone Equities Farmingdale Corp., and the subsidiary service corporation then participated in a joint venture specifically authorized by relevant Federal regulation.
Plaintiff also contends that pursuant to the terms of the parties’ agreement, the funds in question are not capital, but constitute a loan, and as such are subject to article 3-A of the Lien Law. The relevant provisions of said agreement provide as follows:
"Article II, Section 2.01 'Initial Capital Contributions’.
"(a) Each of the venturers has contributed or will sell, contribute or loan to the venture the following:
"Company (Whitestone Equities Farmingdale Corp.), will contribute an amount not to exceed $1,100,000.00 to provide the sums necessary to complete (i) the purchase of the premises in accordance with the terms and conditions of the contract, and (ii) the contemplated improvements. Title to the premises will be vested in the company, which shall hold the same as nominee for the venture. Developer (Tesi Associates, Inc.) will contribute its expertise as developer.
"(b) The agreed net value of the assets of the venture is $200.00, and accordingly, the net value of the fifty percent interest therein contributed by company is $100.00, and net value of the fifty percent interest thus contributed by developer is $100.00.
*944 "(c) All such property, contributed at its agreed net value, shall be credited to the capital account of the venturer making such contribution.
"Section 2.02 'Financing’.
"(a) The venture has obtained commitments for building loans to construct project homes from Whitestone Savings, F.A. (the 'Building Loans’). Said Building Loans shall bear interest and be paid out of the net cash flow, as hereinafter provided. Developer shall receive a fee in an amount equivalent to the total interest paid on the Building Loans (the 'Builder’s Fee’), which fee shall likewise be paid out of the net cash flow, as hereinafter provided.
"(b) Each venturer shall have the right, but not the duty, in order to protect or preserve the project, to lend to the venture such additional funds as shall be needed, which loan shall bear interest and be repayable out of net cash flow as hereinafter provided.”
The plaintiff relies on section 2.01 (b), which provides that the agreed net value of the assets of the venture is $200, each party to the venture having contributed $100. Plaintiff argues that because the agreement provides that each party contributed only $100, the $1,100,000 in question must be construed as a loan rather than a capital contribution. This argument is unpersuasive for two reasons.
First, when construed as a whole, the court finds that the agreement herein unequivocally provides by its terms that the parties to the agreement intended the $1,100,000 in question as a capital contribution by Whitestone Equities Farmingdale Corp., and not a loan. (See, Fazio v Tracy, 39 Misc 2d 172.) Section 2.01 (a) of the agreement, entitled "Initial Capital Contributions”, clearly provides that Whitestone Equities Farmingdale Corp. will contribute said sum. Section 2.02 deals with loans as opposed to capital contributions. The agreement provides at section 2.02 for the payment of interest on both building loans, and any optional future loans made by either party to the agreement to the joint venture. Whitestone Equities Farmingdale Corp. is not entitled to interest on the $1,100,000 according to the terms of the agreement. Rather, Whitestone Equities Farmingdale Corp. and Tesi Associates were to share equally in the profits earned by the venture. Whitestone Equities Farmingdale Corp. was entitled to an equal share of the profits, based upon its capital contribution, while Tesi Associates was entitled to its share, based upon its contribution of expertise.
*945 This interpretation of the agreement herein complies with Partnership Law § 40, which provides as follows: "Each partner shall be repaid his contributions, whether by way of capital or advances to the partnership property and share equally in the profit and surplus remaining after all liabilities, including those to partners, are satisfied * * *
"A partner, who in aid of the partnership makes any payment or advance beyond the amount of capital which he agreed to contribute, shall be paid interest from the date of the payment or advance * * *
"A partner shall receive interest on the capital contributed by him only from the date when repayment should be made.” (Partnership Law § 40 [1], [3], [4].)
Further, the plaintiff failed to adduce any testimony or evidence at the hearing held herein which would compel a finding that the $1,100,000 in question herein was a loan as opposed to a capital contribution. The only witness who testified was Mr. Richard Schneider, formerly employed by Farmingdale Partners in a management capacity. Mr. Schneider testified that the funds available to the project included the subject $1,100,000, two building loans advanced by Whitestone Federal Savings and Loan Association, and financing in the form of unsecured notes from an entity called Pheasant Ponds Associates. All funds were commingled in a checking account whereupon disbursements were made for varied purposes, including the acquisition of land, improvements, taxes, salaries, and other administrative expenses.
The law does not require a trustee owner or contractor to hold trust funds intact, and commingling of trust funds with nontrust funds does not serve to change the character of the nontrust funds to funds subject to the Lien Law. (See, Aquilino v United States, 10 NY2d 271; Fentron Architectural Metals Corp. v Solow, 101 Misc 2d 393; Utica Sheet Metal Corp. v Schecter Corp., 47 Misc 2d 290.) In fact, a trustee may treat the trust funds as a running bookkeeping balance, rather than segregated accounts. (Caristo Constr. Corp. v Diners Fin. Corp., 21 NY2d 507.) Again, plaintiff failed to offer any proof at the hearing that the funds in question constituted Lien Law trust funds.
The second basis for the lack of validity in plaintiff’s interpretation of the agreement is that the characterization of the funds in question, as a loan as opposed to capital, is not relevant to discovery under section 76 of the Lien Law. *946 Pursuant to Lien Law § 70 (5), only specified, delineated types of funds, such as a building loan contract or building loan mortgage, are deemed to be trust assets to which the owner is a trustee. The categories of funds which are trust assets are finance proceeds or funds borrowed by an owner from a lender. The personal funds of an owner lent to a joint venture are not trust assets. In fact, an owner who expends personal funds on a construction project may reimburse himself for such expenditures from trust assets. (See, People v Rosano, 69 AD2d 643; Fentron Architectural Metals Corp. v Solow, supra.) The loan of funds belonging to an entity participating in joint venture to the venture does not make the venture a trustee of said funds. At first blush, this rule seems to create a loophole in article 3-A of the Lien Law in situations wherein a lending institution buys the stock of a wholly owned service corporation, and said service corporation then utilizes the proceeds of the sale of its stock to improve real property. This scenario would seem to defeat the intent of article 3-A of the Lien Law, by leaving those whom the statute intended to benefit, unprotected in any construction project wherein the owner of the project is the lending institution itself.
Section 22 of the Lien Law, however, mandates that all building loan contracts showing, among other things, the net amount available to the borrower for an improvement be filed in the office of the appropriate County Clerk. This statute is designed to enable a contractor or subcontractor to learn the amount available for a project prior to the delivery of contemplated services and materials. (Nanuet Natl. Bank v Eckerson Terrace, 47 NY2d 243; Realty Improvement Funding Co. v Stillwell Gardens, 91 Misc 2d 718.) Neither the capital investment by a wholly owned subsidiary service corporation to a joint venture, nor loans of the service corporation’s own funds to its own venture, will be filed in the office of the appropriate County Clerk. Contractors and subcontractors cannot, therefore, justifiably rely upon said funds as "financing dollars” when determining whether or not a project is sufficiently financed prior to the performance of work on the project. No proof was adduced at the hearing, and no showing has been made in any of the papers submitted herein that the subject $1,100,000 was loaned to either or both of the defendants pursuant to a building loan contract, filed with the office of the County Clerk. There was no showing that plaintiff relied upon the availability of said funds in determining whether or not it was prudent to perform work for Farmingdale Partners.
*947 If additional protection is required to prevent the diversion of funds, by subsidiary service corporations of financial institutions, which participate in the development of real property, in order to protect those who perform the actual work of improving the property, relief must come from the Legislature and not from the courts.
In summation, the court finds that the subject $1,100,000 were not trust funds pursuant to Lien Law § 70 (5), and accordingly, the plaintiff is not entitled to a verified statement of entries in books and records relating to said sum.