OPINION OF THE COURT
Louis C. Benza, J.
Motion by defendant for an order of dismissal.
In 1992 claimant corporation was the general contractor in charge of building an elementary school, and Torgalski Concrete, Inc. (Torgalski) was subcontracted to perform the concrete work. Torgalski, in turn, purchased the concrete used on the project from another company, Paul Riefler, Inc. (Riefler). On September 25, 1992 claimant paid Torgalski $26,638.15 for work performed on the project,[2] work that included installation of the concrete purchased from Riefler. Torgalski placed this money in its account in Key Bank of New York. Less than two weeks later, on October 5, 1992, the New York State Department of Taxation and Finance (Tax Department) issued a tax levy on Torgalski’s Key Bank account in the amount of $24,373.16 for unpaid back taxes.[3] Subsequently, Torgalski was unable to pay Riefler, and Riefler made a claim against claimant’s performance bond. Claimant then settled with Riefler for the sum of $20,000 and instituted this action as Riefler’s subrogee.
By this action, claimant seeks to recover the money it paid to Riefler on the ground that the funds which Taxation and Finance removed from Torgalski’s bank account "were trust funds pursuant to New York State Lien Law”, which could be used only to pay Torgalski’s suppliers and materialmen on the school project and were not to be applied to his previous debts. Defendant moves to dismiss the claim on the ground that it does not state a cause of action cognizable in the Court of Claims, asserting that all challenges to a Tax Department levy of funds must be made by way of a CPLR article 78 proceeding. Claimant, relying on St. Paul Fire & Mar. Ins. Co. v State *427 of New York (99 Misc 2d 140), argues that the Court of Claims has jurisdiction over an action to enforce a trust under article 3-A of the Lien Law.
Under that statute, funds received by a contractor or subcontractor in connection with work to improve real property in this State automatically become assets of a statutory trust and are to be used only for payment of certain expenditures arising out of the work (Lien Law §§ 70, 71 [2]). Among expenditures that may be paid from trust assets are claims of those who have supplied building materials (Lien Law § 71 [2] [a]). No executed covenant is required to create this trust (Lien Law § 70 [4]), and it becomes effective as soon as there is an asset, even if, at that time, there is no beneficiary of the trust (Lien Law § 70 [3]). Trust beneficiaries are defined in section 71 (4) as follows: "Persons having claims for payment of amounts for which the trustee is authorized to use trust assets as provided in this section * * * whether or not they have filed or had the right to file a notice of lien as provided in [Lien Law art 2] or shall have recovered a judgment therefor.” In the instant case, claimant, as subrogee of Riefler, is a trust beneficiary.
The assets of an article 3-A trust are not required to be kept in a separate bank account but may be deposited in the name of the trustee and commingled with other funds. Records must be kept, however, to "clearly show the allocation to each trust of the funds deposited in his general or special bank account or accounts” (Lien Law § 75 [1]; Fentron Architectural Metals Corp. v Solow, 101 Misc 2d 393; Raisler Corp. v Uris 55 Water St. Co., 91 Misc 2d 217). Detailed bookkeeping requirements are imposed by the statute, and trust beneficiaries are entitled to examine the trustee’s books and records at least once a month after their trust claims become payable (Lien Law §§ 75, 76).
Any transaction by which the trust’s assets are "paid, transferred or applied for any purpose other than a purpose of the trust” is a diversion of trust assets, and, again, this is true whether or not there were any trust claims in existence at the time of the transfer (Lien Law § 72 [1]). The statute gives protection, however, to the rights "of a holder in due course of a negotiable instrument or of a purchaser in good faith for value and without notice that the transfer [was] a diversion of trust assets” as long as they did not have notice that a transfer to them was a diversion of trust assets (id.). Lien Law § 72 (2) provides that "[t]rust assets shall not be levied upon or *428 subject to a restraining notice issued pursuant to [CPLR 5222] as the individual property of the trustee.”
That, of course, is what occurred here: the trust assets were levied upon as the individual property of Torgalski to satisfy Torgalski’s debt. That is also what occurred in St. Paul Fire & Mar. Ins. Co. v State of New York (99 Misc 2d 140, supra). In that case, one of the arguments raised by the State was that, because it was not aware that the funds it levied were part of an article 3-A trust, it was acting as a bona fide purchaser without notice. This argument was rejected on the ground that "the trust is statutory and the State is presumed to know the law”. (Supra, at 157.) In addition, we observe that there is no language parallel to that in subdivision (1) which limits the statute’s prohibition on levies or restraining orders to only those instances in which the relevant authority has knowledge that the funds sought are part of an article 3-A trust.
Section 77 of the Lien Law sets out the procedures to be followed by any holder of a trust claim, or that person’s subrogee, in bringing an action to enforce an article 3-A trust. Enforcement must be sought "in a representative action brought for the benefit of all beneficiaries of the trust”, and the procedures of CPLR article 9, applicable to class actions, are to be followed "as nearly as may be” (Lien Law § 77 [1]).
The relief that may be granted by the court in such an action includes:
—compelling an interim or final accounting by the trustee;
—enforcing any right of action held as a trust asset;
—determining the amount and existence of any trust claim;
—ordering the authority of the trustee to be limited or terminated;
—requiring the trustee to give security to ensure proper distribution of the trust assets;
—issuing an order for distribution of the available trust assets;
—settlement of the trustee’s interim or final accounting;
—final discharge of the trustee, either finally or with respect to the application of specific trust assets; and
—"[a]ny provisional or ancillary relief incident to any of such relief’ (Lien Law § 77 [3] [a] [i]-[x]).
In distributing assets, the court shall recognize the statutory preferences given to certain types of claims (Lien Law § 77 [8]). When there are not sufficient funds to fully pay all trust *429 beneficiaries, "each unpaid claim is entitled to share with other unpaid claims on a pro-rata basis out of the remaining trust corpus” (Rifenburg Constr. v Construction Directors/Mgt. Sys., 192 AD2d 1029, 1031).
Claimant, as the subrogee of a trust beneficiary, has standing to commence an action to enforce the trust if, as is alleged, assets of the trust have been paid out for an unauthorized purpose such as payment of Torgalski’s individual debt. The instant claim, however, is not in the proper form, as claimant did not commence the action as a representative of all trust beneficiaries but, rather, as an individual party. Claimant has not asked this court to enforce the trust in accordance with the provisions of Lien Law § 77, a procedure which would result in distributing any recovered trust assets proportionally between all beneficiaries. Instead, claimant seeks a judgment solely compensating it for the full amount paid to the materialman. While this court certainly has jurisdiction to award a judgment for money damages against the State, nothing in article 3-A gives a single trust beneficiary the right to demand dollar for dollar repayment of its claim against the trust fund, without regard to the other assets and/ or other beneficiaries. Failure to commence an action in the required representative form is not necessarily fatal, and a continuance to permit other potential beneficiaries to come forward should, in most instances, be granted (Scriven v Maple Knoll Apts., 46 AD2d 210, 215).
There is a more serious problem with this claim, however.
In St. Paul Fire & Mar. Ins. Co. v State of New York (99 Misc 2d 140, supra), in remarkably similar circumstances, Judge Gerard M. Weisberg held that the Court of Claims has jurisdiction to hear an action to enforce an article 3-A trust. This holding was based on the court’s jurisdiction over a wide variety of statutory causes of action, in addition to traditional common-law actions (supra, at 150-151) and the fact that an action to enforce a trust may be considered a legal, rather than purely equitable, cause of action (supra, at 149). In St. Paul Fire & Mar. Ins. Co. v State of New York, the claimant had moved for summary judgment in its favor on the ground that the tax levy on trust assets to satisfy the individual debt of the trustee violated the prohibition of Lien Law § 72 (2). Although it was held that the action could be commenced in the Court of Claims, the motion for summary judgment was denied as premature because it had not been commenced as a representative action. Consequently, Judge Weisberg did not *430 address the issue of remedy, except to note that a party may elect among the available legal remedies, even if some are "less effective and complete” than others (supra, at 150).
The holding in St. Paul Fire & Mar. Ins. Co. v State of New York (supra) hinged on the view that because "[t]he primary, if not the sole object of the claim is to recover a sum of money equal to the amounts illegally levied upon by the State” (supra, at 156), the Court of Claims is the appropriate forum for such an action. This conclusion was buttressed by the Court of Appeals ruling that the Court of Claims may "apply equitable considerations and perhaps, to some extent, may grant some sort of incidental equitable relief’ (supra, at 154, quoting Psaty v Duryea, 306 NY 413, 417) and by the fact that a trust created by article 3-A of the Lien Law is not a creation of equity courts but, rather of the Legislature (supra, at 152).
With respect, this court takes a different view of the matter. Once an action to enforce an article 3-A trust is instituted, the court before which that action is heard is empowered to do many things in addition to and beyond making an award of any amounts the State has unlawfully acquired. It is empowered to carry out "any or all” of the steps itemized above, steps which include determining the existence of any trust asset — not just a trust asset which has improperly been acquired by the State (Lien Law § 77 [3] [a] [iii]). It is quite conceivable that persons and entities other than the State may hold funds that have been improperly paid out from an article 3-A trust, but this court can have no jurisdiction over those parties and would not be able to issue a judgment removing funds from their control and restoring them to the trust. Nor can this court order an accounting, enforce a right of action on behalf of the trust, or oversee the actions of a trustee. For the Court of Claims to exercise its power with respect to the one type of trust asset — an asset in possession and control of the State — and to distribute that one asset among the trust beneficiaries, without being able to reach other types of assets or perform other duties delegated to the court by section 77 (3), would undermine the function and purpose of the statutory cause of action: achieving a comprehensive gathering of all trust assets and fairly distributing those assets among all trust beneficiaries.
With only one exception, not applicable here,[4] the Court of *431 Claims Act expressly gives this court only the power "[t]o render judgment in favor of the claimant or the state for such sum as should be paid by or to the state” (Court of Claims Act § 9 [4]). This authority has been expanded slightly by case law, as noted above, to include the power to apply equitable principles and grant some sort of equitable relief but only when such steps are incidental to the claim for money damages against the State (Psaty v Duryea, 306 NY 413, 417, supra). In an action to enforce an article 3-A trust, however, the issue of whether the State has improperly taken possession of a trust asset is but a small part of the over-all proceeding. The primary object of such an action, in our view, is not to require the State to pay money damages to any one trust beneficiary, or even to all the beneficiaries, but, rather, the accumulation of all trust assets (including those that have been improperly diverted to parties other than the State) and to dispose of those assets in a fair and orderly fashion.
We conclude therefore that an action to enforce a trust which has been established pursuant to article 3-A of the Lien Law is not primarily or principally an action for money damages against the State, even if the State is alleged to be a recipient of funds improperly diverted from the trust. Consequently, we hold that the Court of Claims does not have jurisdiction to hear the claim. For this reason, defendant’s motion is granted and the claim is dismissed.

. The papers do not make it clear whether this check was for all or only part of Torgalski’s work.

. There is nothing to suggest that this tax liability had arisen in connection with any work performed by Torgalski on the elementary school project in question.

. The court may, with some limitations, determine the obligation of an *431 insurer to defend and indemnify the defendant (Court of Claims Act §9 [9-a]).